In the Matter of John J. CLEARY and Elaine H. Cleary, his wife, Debtors.

Bankruptcy No. 81–00549.

United States Bankruptcy Court, W. D. Pennsylvania.

Feb. 18, 1982.

Gary V. Skiba and Colussi, Yochim, Skiba & Vogel, Erie, Pa., for petitioner.

Lawrence A. D'Ambrosio, Erie, Pa., for debtors.

James K. McNamara, and Quinn, Gent, Buseck & Leemhuis, Inc., Erie, Pa., for trustee.

## MEMORANDUM AND ORDER ON APPLICATION FOR EXTENSION OF TIME FOR FILING PETITION TO DETERMINE DISCHARGEABILITY OF DEBT

WILLIAM B. WASHABAUGH, Jr., Bankruptcy Judge.

The within bankruptcy case was filed by the debtors September 11, 1981 and the Court fixed November 13, 1981 as the last day for filing objections to the debtors' discharge and petitions to determine dischargeability of debts. The dockets in the clerk's office reflect that notice of this expiration date was mailed to the creditors listed in the debtors' schedules September 29, 1981, and the application recites that although the applicants' name and address as a secured creditor were correctly listed in the schedules and the court's records show an appropriate notice was mailed to the applicant, it never received such notice; more specifically, that the notice was not received by the applicant's employee who dealt with the account or by the applicant's central file for distribution in accordance with its usual routine.

A similar case was before us in the case of *Union Bank & Trust Co. v. Salvatore A. Tassone, et al.*, No. 80–00382, in which the debtor returned from Florida for a hearing in an adversary proceeding in a county courthouse some 115 miles distant from Erie and the creditor's counsel when contacted on the telephone stated neither he nor his client, the Union Bank, had received notice thereof. The Court ruled that since its records and dockets showed the notice had been mailed to the creditor and its attorney simultaneously with the notice to the debtor and his counsel which were received, it would not permit the general allegations that the notice had not been received to contradict the court's records and proceeded with the hearing as the debtor had to catch a return plane to Florida. The ruling was affirmed on Appeal by Chief United States District Judge Gerald J. Weber, November 9, 1981 at Civil Action No. 81–207 Erie.

The creditor cites the case in *In re Faino*, 1 C.B.C.2d 762 (S.D.Fla.1980) in which an extension of the time for filing a dischargeability petition was granted after the time therefor had expired, but in that case the reason the creditor had not received the notice was that an address in the wrong state was given for the creditor in the debtors' schedules. In the case of *In re Capshaw*, 423 F.Supp. 1388 (E.D.Va.1977), also cited by the creditor, the Bankruptcy Court extended the time for filing after it had expired on the ground that it had a wide discretion to do so under Bankruptcy Rule 906(b) in cases of excusable neglect, but the District Court reversed the Order of the Bankruptcy Court saying that while the Court had discretion to allow such enlargement of time in proper cases, it was not empowered to do so in the absence of a finding and record of the existence of such neglect (from page 1390):

> "This provision gives the Bankruptcy Judge wide discretion to allow late filings but that discretion must be based on facts upon which a finding of excusable neglect can be made. *Keenan v. Builders Applices, Inc.*, 384 F.Supp. 14 (E.D.Wis.1974).
>
> .    .    .    .    .
>
> "Absent the exercise of its discretion based upon experience, judgment, and a factual record in finding excusable neglect, the Bankruptcy Court may not permit the filing of a complaint objecting to the bankrupt's discharge."

The applicant says neither the employees in charge of the account nor the central filing office received the notice, but the records of the Bankruptcy Court show it was properly mailed and the creditor admits that its address was properly set forth in the debtors' schedules. The presumption that the addressee of properly addressed mail received the same in due course is virtually irrebutable, and we think banks and other organizations and associations must follow procedures which will insure a proper processing of these notices when they are received.

The *Tassone* case and the instant proceeding comprise the only situations involving alleged non-receipt of duly mailed notices to come before the Court in which the undersigned has presided for 22½ years and we think that if the recipients of such notices of which many thousands are sent each year are permitted to contradict the official records of its competent clerks, the flood gates would be opened like a Pandora's box to a myriad of belated applications based on similar allegations and that the procedures and rules of Court designed for the protection of both the bankrupt and its creditors, as stated by the District Court for the Eastern District of Virginia in *In re Capshaw*, supra, would become meaningless; that such situations would not arise if the organizations' clerks who have been found to have been grossly negligent in referring matters to counsel and taking required steps in matters involving filings to perfect secured transactions under the Uniform Commercial Code and other complications were properly trained and supervised. The notice of the final date for filing dischargeability petitions is at the bottom of the notice of the first meeting of creditors and it would be very easy for a careless or untutored employee to overlook it and the precedent of permitting the official dockets and records of the Court to be contradicted and opened up on the strength of general allegations negating receipt of documents subject to processing by numbers of employees would be dangerous if made: we decline to grant the prayer of the application that we effect such result and hereby refuse and deny such prayer.