In the Matter of ROBINTECH, INC., Debtor.

OPPENHEIM, APPEL, DIXON & CO., Appellant,

v.

Bob BULLOCK, Comptroller of Public Accounts of the State of Texas, Appellee.

No. 88–1269.

United States Court of Appeals, Fifth Circuit.

Jan. 20, 1989.

Jo Ann Biggs, D.M. Lynn, Marilyn D. Garner, Moore & Peterson, Dallas, Tex., for appellant.

Phillip F. Arrien, II, Susan F. Eley, Jim Mattox, Atty. Gen., Austin, Tex., for appellee.

Before REAVLEY, HIGGINBOTHAM and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

We are called upon today to determine whether the district court properly upheld a bankruptcy court ruling permitting a creditor to file his claim after the bar date in a Chapter 11 proceeding. Concluding that the district court's decision was based upon clearly erroneous findings of fact and misapplications of law, we reverse and hold that the creditor's claim is barred.

### I. *Factual and Procedural Background.*

On July 7, 1983, an involuntary petition was filed against Robintech, Inc. (the "debtor"). The order for relief was entered on July 20, 1983. The notice of the first meeting of creditors was mailed on September 23, 1983, and the first creditors' meeting was held on October 25, 1983.

The bankruptcy court signed the Order Setting Bar Date Within Which Proofs of Claim Must Be Filed ("Bar Date Order") on January 25, 1984. The Bar Date Order provided that creditors must file proofs of claim with the Clerk of the Bankruptcy Court on or before February 14, 1984, at 4:30 p.m. A copy of the Bar Date Order was sent by the debtor to each of its creditors whose name and address was set forth in the exhibit that was attached to the certificate of mailing that was filed of record on January 23, 1984. Bob Bullock, Comptroller of Public Accounts of the State of Texas ("Comptroller"), was included in that list of creditors. The notice to the Comptroller was sent by the debtor to the following address, which was listed on the exhibit to the certificate of mailing:

State Treasurer—Bob Bullock
Comptroller of Public Accounts
Capitol Station
Austin, Texas 78774

The Comptroller received the notice of the bar date on January 31, 1984, and filed his priority proof of claim in the amount of $92,742.90 on February 16, 1984, two days after the deadline established in the Bar Date Order. The bankruptcy trustee, appellant Oppenheim, Appel, Dixon & Co. (the "trustee"), filed its objection to the Comptroller's claim on November 28, 1984, on several grounds, including that the claim was filed after the bar date. The Comptroller's answer stated that his failure to file a claim by February 14, 1984, was the result of excusable neglect and that Bankruptcy Rule 9006(f) extended the deadline for filing claims by three days as a result of the mailing of the notice of bar date.

The trustee filed a motion for summary judgment on October 28, 1986. At the hearing of this motion, the Comptroller argued that rule 9006(f) served to extend the bar date by three days because the notice of a bar date was served by mail and that his claim should have been deemed, therefore, to have been timely filed. The Comptroller made no argument that his failure to file his claim before the bar date was the result of excusable neglect.

During that hearing, the Comptroller also asserted for the first time that there were inaccuracies in the address on the notice of the bar date that allegedly caused a delay in receipt, thereby depriving him of adequate notice of the bar date. The Comptroller alleged that the notice, as addressed, was initially received by the State Attorney General's Office, another state agency that uses the same post office address.

At the close of the hearing, the bankruptcy court requested additional evidence concerning the address used by the debtor to transmit the notice to the Comptroller. The Comptroller filed a letter memorandum

on December 8, 1986, wherein his correct mailing address was alleged to be P.O. Box 13528, Capitol Station, Austin, Texas 78711. He also noted in this letter memorandum that the zip code used on the certificate of mailing is the correct one for his street address but not his post office box. Finally, the Comptroller asserted that he received the notice of bar date on January 31, 1984.

On February 3, 1987, the bankruptcy court entered its findings of fact and conclusions of law, which stated (1) that the notice of the bar date had been addressed to "State Treasurer—Bob Bullock, Comptroller of Public Accounts, Capitol Station, Austin, TX 78774"; (2) that the correct address was "State Comptroller, P.O. Box 13528, Capitol Station, Austin, TX 78711"; (3) that rule 9006(f) applies in the instant case to afford the Comptroller an additional three days beyond the established bar date to file his proof of claim, since notice of the bar date was given by mail; and (4) that the Comptroller filed his claim on February 16, within the extended three-day period allegedly authorized by rule 9006(f).

Consequently, the court concluded that the Comptroller's claim was deemed to be timely filed. On February 17, 1987, the bankruptcy court denied the trustee's motion for summary judgment and allowed the claim.

On appeal to the district court, the trustee argued that rule 9006(f) does not extend the bar date by three days just because the notice of the bar date is served by mail but that the rule instead applies only in situations where personal service is the primary method of service. The trustee also contended that minor inaccuracies in the Comptroller's address did not vitiate the effect of the timely mailing of the notice thereto. The Comptroller responded, expectedly, that rule 9006(f) applies in this case to afford him an additional three days beyond the established bar date to file his proof of claim and that the notice was misaddressed, delaying receipt and impairing the Comptroller's ability to file his claim before the bar date. The district court affirmed; we now reverse.

## II.  *Bankruptcy Rule 9006(f).*

■  Subject to certain irrelevant exceptions, Bankruptcy Rule 2002(a)(8) requires that "all creditors ... [be given] not less than 20–days' notice by mail of ... the time fixed for filing proofs of claims pursuant to Rule 3003(c)." The advisory committee note indicates that notice by mail is effective upon mailing. Rule 3003(c)(3) provides that courts in Chapter 11 cases "for cause shown may extend the time within which proofs of claim or interest may be filed." Rule 9006(f) provides that "[w]hen there is a right or requirement to do some act ... within a prescribed period after service of a notice ... and the notice ... is served by mail, three days shall be added to the prescribed period."

In determining whether to apply rule 9006(f) in this case, we note that it is worded very similarly to Fed.R.Civ.P. 6(e). In fact, the advisory committee note indicates that rule 9006(f) "is new and is the same as Rule 6(e) F.R.Civ.P." Hence, we may construe the former rule by reference to precedents interpreting the latter.

Our own rule 6(e) precedent weighs heavily against applying rule 9006(f) to the instant case. In *Carr v. Veterans Admin.,* 522 F.2d 1355, 1357–58 (5th Cir.1975), we held that the purpose of rule 6(e) is only to guarantee that parties served personally have no advantage over those served by mail. The rule accordingly applies only when the "prescribed period" is fixed by the date on which notice is served.[1] Where, as here, all notices must be by mail, there is no need for such compensation, as all parties are theoretically subject to the same delays. Thus, *Carr* instructs that rule 9006(f) does not apply to the instant facts.

---

**1.**  For example, if some act must be done within ten days of notice and one party is served personally and another by mail under a "mail box rule," the first party would have the unfair advantage of the time it takes the letter notice to reach the second. The three-day extension functions to compensate for this possible disparity.

Our reliance here upon *Carr* underscores the fact that Federal Rules of Civil Procedure precedent can be helpful, in appropriate instances, in construing the new Bankruptcy Rules. This is true at least where, as here, either the bankruptcy rule itself or the accompanying advisory committee note makes reference to an analogous or seminal civil rule. Our application of rule 6(e) precedent to rule 9006(f) in this case is similar to the approach we recently followed, for example, in *In re Seiscom Delta, Inc.*, 857 F.2d 279, 281 (5th Cir.1988) (employing Fed.R.Civ.P. 58 authority in interpreting Bankruptcy Rule 9021(a)) and *In re Aguilar*, 861 F.2d 873, 874–75 & n. 2 (5th Cir. 1988) (per curiam) (noting that Bankruptcy Rules 9023 and 9024 are equivalent to, respectively, Fed.R.Civ.P. 59 and 60, except as otherwise expressly provided).

### III. *Improper Address.*

The trustee's brief confuses the discussion of whether the debtor was negligent in giving notice with the issue of the adequacy of the thirteen-days' notice received by the Comptroller. These are distinct questions. The latter really concerns whether, under these facts and circumstances, the creditor should be estopped from claiming that he was harmed by defective notice.

■ Certain findings made by the district court appear to be clearly erroneous. There is no evidence supporting the finding that the delay in receipt of notice caused the late filing. The court relied exclusively upon *In re Am. Properties, Inc.*, 30 B.R. 239 (D.Kan.1983), which held that fifteen days' notice was insufficient where the creditor never received the notice, never filed any claim, and had no prior knowledge of the bankruptcy. However, the court in that case made specific supported findings on each of these points. Patently, that decision does not impose a bright-line fifteen-day rule.

The proper resolution rather depends upon the facts and circumstances of each particular case. Thus, to the extent that the district and bankruptcy courts applied the fifteen-day test as a matter of law, this represents an improper legal conclusion. To the extent that they found facts indicating that a facts-and-circumstances test was met, such findings were completely conclusory.

■ At best, the record supports a finding that the notice may have been misaddressed and that this may have caused a two-day delay in receipt. But there is no indication that any such delay in receipt caused the delay in filing. The Comptroller's brief bemoans the huge case load which he handles and the complications in preparing a claim, but most of this amounts to summary assertion. The record contains no specific evidence of causation that could support such a finding. Thus, even if the address were improper, this does not excuse the late filing, and we may reverse without remanding to determine whether the address was actually incorrect.

### IV. *Receipt of Notice and Vitiating Effect.*

■ A creditor's claim can be barred for untimeliness only upon a showing that it received reasonable notice. *New York v. New York, New Haven & Hartford R.R.*, 344 U.S. 293, 297, 73 S.Ct. 299, 301, 97 L.Ed.2d 333 (1953); *Am. Properties*, 30 B.R. at 245; *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 318, 70 S.Ct. 652, 657, 659, 94 L.Ed. 865 (1950). Hence, whether notice to a creditor is adequate depends upon the facts and circumstances of a given case. In general, due process requires that reasonable notice is that which is reasonably calculated to reach all interested parties, reasonably conveys all of the required information, and permits a reasonable amount of time for response. *Mullane*, 339 U.S. at 314, 318, 70 S.Ct. at 657, 659. In the instant case, evaluation of notice encompasses two distinct questions: first, whether the circumstances indicate that the creditor actually had or should be charged with notice before receipt of the trustee's letter; and second, whether, assuming that the creditor had no adequate prior notice, the thir-

teen days it had, in comparison to the possible twenty, were sufficient to pass muster.

■ The trustee's claims that the creditor had or should be charged with prior notice boil down to the assertion that a general awareness of the pending bankruptcy for several months bars any complaints as to minor failures in specific notice. Because the Comptroller should have been aware of the declaration of bankruptcy in July and the creditors' meeting in October, he had plenty of time to prepare his claim and should not now be heard to argue that he had inadequate notice.

■ Having determined that the Comptroller at least should have been generally aware of the bankruptcy and the possibility of having to prepare a claim, we now address the efficacy of the notice actually received. The Comptroller at most lost two days in preparing his claim as a result of the possibly incorrect address. In any event, he had thirteen days out of a possible twenty. Certainly, if he had had the full twenty days, he could have no complaints as to defective notice. As we have stated, there is no evidence that the two-day delay caused the late filing. If the Comptroller is to prevail on this claim, he must therefore explain, without relying upon the delay, why the full period was inadequate.

When the notice was received, the Comptroller knew that he had only thirteen days to file. An experienced creditor must be aware of the significance of bar dates. The Comptroller never asked for an extension or provided any excuse for his untimeliness until the trustee moved for dismissal of its claim.[2] There is no evidence to support a finding that thirteen days was inade-

quate or unreasonable notice. The vague assertions regarding handling multiple cases and the difficulty of preparing a claim are no more adequate in this context than they were in proving that a possible two-day delay in receipt caused the late filing.

Moreover, the fact that the Comptroller handles myriads of claims such as this, on behalf of the State of Texas, and that such is indeed one of the most important functions of his office, suggests that his staff should be especially proficient in filing claims to protect the public purse. Thus, inability to file claims on time, while perhaps understandable on the part of an inexperienced creditor, is hardly an excuse for this creditor.

■ Finally, in its discussion of notice defects the bankruptcy court included allusions to general constitutional deficiencies. To the extent that these considerations affected the outcome, they were wrong as a matter of law and do not warrant substantial discussion. The cases referred to[3] consider the adequacy of various forms of notice by publication and whether the receiving party should be charged with awareness of such notice. Where the party actually receives a notice with only a minor delay, there can be no due process problem without a showing of harm. To say that any defect in notice here, either because of the two-day delay or the general inadequacy of the thirteen-day period where twenty days is the effective maximum, rises to constitutional dimensions presumably would call into question many existing notice systems.

The purpose of the bankruptcy laws is quickly and effectively to settle bankrupt

---

**2.** The requirement for getting an extension before the bar date is strict: "In most cases, if the creditor has enough notice to seek an extension of the time for filing, enough time will exist actually to prepare and file a proof of claim. However, where time is required to liquidate the claim or where substantial investigation is required, an extension of time will be appropriate." 8 *Collier on Bankruptcy* ¶ 3003.05[4] at 3003–11 (15th ed. 1988). The Comptroller also could have, but failed to, ask for an extension after the bar date passed, based upon excusable neglect. 9 *Collier on Bankruptcy* ¶ 9006.06 at

9006–15 through 9006–18 (15th ed. 1988). As revealed in the discussion above and below, there is no indication that the Comptroller could have satisfied either of these standards if he had sought an extension.

**3.** I.e., *New York v. New York, New Haven & Hartford R.R.; In re Intaco Puerto Rico, Inc.,* 494 F.2d 94, 99 (1st Cir.1974) (relying upon significance of failure to mail notices to any creditors).

estates. *Katchen v. Landy*, 382 U.S. 323, 328, 86 S.Ct. 467, 471–72, 15 L.Ed.2d 391 (1966). Under the Bankruptcy Code and rules, creditors play a zero-sum game in which a failure to navigate effectively through various intricate procedures can mean total defeat. Moreover, because such procedures are thought to be necessary to protect the bankrupt and the creditors, exceptions cannot be made every time a creditor claims hardship. *See In re Cleary*, 18 B.R. 114, 115 (Bankr.W.D.Pa. 1982). Frequent players in the bankruptcy arena, such as the Comptroller, know this and are aware that deadlines are important and should not be heard to complain of unfairness except under the most egregious circumstances. To allow the late-filed claims of creditors such as the Comptroller, under the circumstances of this case, would be unfair to all of the creditors who filed on time, despite possible hardships, and whose slice of the bankruptcy pie would be smaller as a result. *See In Re Clear Fork Energy Resources, Inc.*, 44 B.R. 110, 113 (Bankr.N.D.Tex.1984). In general, it is the other diligent creditors who will be harmed by permitting late claims, not the debtor whose actions may have been a factor in the late filing.

For the aforementioned reasons, we REVERSE the district court and render judgment that the Comptroller's claim is barred.