**In re George S. NALLE, III, Debtor.**

**Bankruptcy No. 90–11370FM.**

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

Feb. 11, 1991.

Ronald E. Ingalls, Austin, Tex., for debtor.·

William R. Leighton, Sp. Asst. U.S. Atty., Austin, Tex., for I.R.S.

## MEMORANDUM OPINION ON MOTION TO ALLOW LATE FILED AMENDED PROOF OF CLAIM

FRANK R. MONROE, Bankruptcy Judge.

On December 13, 1990, the Court heard the Debtor's Objection to Amended Proof of Claim of the Internal Revenue Service ("Debtor's Objection") filed October 4, 1990, and the United States of America's (Internal Revenue Service) Motion to Allow Late Filed Amended Proof of Claim ("IRS Motion") filed October 4, 1990, as well as the responses thereto, in the above-referenced bankruptcy case. The Court has considered the pleadings, the evidence, and the arguments of counsel, its own independent review of the files of the case, and its own independent legal research.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and (b)(1), and the Standing Order of Reference issued in this District. This is a core proceeding under 28 U.S.C. § 157(b)(2)(O).

This memorandum opinion shall constitute Findings of Fact and Conclusions of Law in conformity with Bankruptcy Rule 7052.

### Findings of Fact

1. The bar date for filing proofs of claim in this case was September 9, 1990.

2. On July 20, 1990, the IRS filed a proof of claim in the case in the amount of $10,931.43 for 1987 1040 taxes. The Debtor properly listed this IRS claim on Schedule A–2—Secured Claims but in a greater amount, $21,458.00.

3. On September 15, 1990, after the bar date, the IRS filed an amended proof of claim in the amount of $452,363.54 adding income taxes allegedly owing for the years 1980, 1983, 1984 and 1985 by reason of the disallowance of certain Restoration Tax Credits taken by the Debtor in those years.

4. The Debtor listed the claims of the IRS which were added by their Amended Claim both on Schedules A–1 and A–3. The matrix of creditors filed by the Debtor listed the IRS at its correct mailing address. Notice of the bar date for filing claims was timely sent to the IRS, which received such notice.

5. The taxes added by the Amended Claim were first asserted by the IRS on June 8, 1989 when it mailed a notice of deficiency to the Debtor and his wife asserting Form 1040 tax deficiency for the years 1980, 1983, 1984 and 1985 in the respective amounts of $6,163.32, $2,638.75, $14,012.54 and $260,804.61.

6. On September 8, 1989, the Debtor and his wife filed a petition in the United States Tax Court regarding the asserted deficiencies under Docket No. 22026–89. This matter was stayed upon the filing of this Chapter 11 pursuant to 11 U.S.C. § 362(a)(8).

7. The IRS alleges these liabilities are non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(7)(A)(ii).

8. Jolene Rush, a bankruptcy specialist with the IRS, was the employee in charge of filing the claim for the IRS in this case. According to her testimony, she came to

the Bankruptcy Clerk's Office and looked at only "Schedule A–1—Creditors Having Priority" where she found the IRS listed for a claim in an unknown amount "for notice purposes only". She did not look at either Schedule A–2 or A–3. Had she looked, she would have found that the IRS was listed on Schedule A–2 for the Form 1040 Income Taxes for the year ending December 31, 1987 as a secured creditor in the amount of $21,458.00 by reason of a real property lien filed in Travis County, Texas on April 12, 1989. She would also have found the IRS listed on Schedule A–3 at page 8 for a disputed claim of $283,-691.22 for the disallowed Restoration Tax Credits.

9. Ms. Rush then went back to her office, fed the information she had received into the computer, and got a four-part form back. She sent one part to the department in the Internal Revenue Service in charge of examination and audit of tax returns, that being the same department that was in charge of handling the audit, examination and disallowance of the Debtor's disputed Restoration Tax Credits. Procedurally, Ms. Rush should have received notification back from the people in this department for any deficiencies that had been proposed. However, she got nothing back and therefore filed the IRS' original claim for 1987 1040 Income Taxes in the amount of $10,931.43. She did not become aware of the proposed deficiencies until September 12, 1990. That is when she prepared the Amended Tax Claim which was filed on September 18, 1990 to which the Debtor has objected.

10. Ms. Rush followed her procedures within the Internal Revenue Service to the letter. She did not receive notification from the Audit/Examination Department of the proposed deficiency. Therefore, it was not included in the original claim.

### Issues

1. Does the amended proof of claim filed by the IRS constitute an amendment to the IRS' timely filed proof of claim?

2. If the amended proof of claim is, in fact, a new and separate claim, was the IRS guilty only of "excusable neglect" so as to permit the Court to enlarge the time for filing the IRS' Amended Claim under Bankruptcy Rules 3003(c)(3) and 9006(b)(1)?

### Conclusions of Law

■ 1. *Amended Claim.* The Court ruled at the hearing on the IRS Motion and the Debtor's Objection that the Amended Claim did not constitute a proper amendment to the original proof of claim and would not be allowed as such. The Court found that the Amended Claim did not in fact amend the tax claim made by the IRS in its original proof of claim. The Amended Claim added a claim for taxes for different periods of time (1980, 1983, 1984 and 1985 vs. 1987), which arose for a different reason (post examination disallowance of Restoration Tax Credits versus failure to pay) and which were for radically different amounts ($452,363.54 vs. $10,931.42). The claims added by the Amended Claim were clearly not amendments to the original tax claim but were in addition thereto. In support of its finding the Court relies upon the following cases: *In re Stavriotis,* 103 B.R. 1005 (Bankr.N.D.Ill.1989); *In re Miller,* 90 B.R. 317 (Bankr.E.D.Tenn.1988) (new taxable periods beyond those covered by the original proof of claim disallowed); *In re Leonard,* 112 B.R. 67 (Bankr.Conn.1990) (there must be some reasonable relation between the amended and timely filed claims and an amendment will not be allowed if it is merely a guise to attempt to file a new claim); *In re Robert Stone Cut Off Equipment, Inc. and Bentley Weldery & Machinery Co.,* 98 B.R. 158 (Bankr.N.D.N.Y.1989) (an amendment after the bar date should bear reasonable relationship to the original filing and be supported by a balancing of the equities); and *In re AM International, Inc.,* 67 B.R. 79 (N.D.Ill.1986) (the amended claim should be in the same nature and also reasonably within the amount of the first).

■ 2. *Excusable Neglect.* Bankruptcy Rule 3003(c)(3) provides for the Court to fix a time within which proofs of claim may be filed. In this case the time was fixed at September 9, 1990, and the notice of that

bar date included in the notice to creditors of the § 341 meeting.

Bankruptcy Rule 9006(b)(1) generally provides that when some act was to be done within a specified period of time and it was not, the Court can in its discretion permit the act to be done upon motion made after the deadline if the failure to act was the result of excusable neglect.

■ Most courts have adopted and have cited with favor *Beneficial Finance Co. v. Manning (In re Manning)*, 4 B.C.D. 3004 (B.Ct., D.Conn.1978), which states that "the failure to timely perform a duty due to circumstances which were beyond the reasonable control of the person whose duty it was to perform" constitutes excusable neglect. *Id.* at 3006.

The Eleventh Circuit, in adopting the same standard in the *Manning* case, set out a detailed examination of the case law then existing with regard to what constitutes excusable neglect in *Biscayne 21 Condominium Association, Inc. v. South Atlantic Financial Corp. (In re South Atlantic Financial Corp.)*, 767 F.2d 814 (11th Cir.1985), cert. den., 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986). Instead of reciting the relevant portions of that opinion, the Court refers the reader to that opinion at pages 817–18 and adopts the same by incorporation.

Also, this definitional standard of excusable neglect has been previously adopted by other courts in the Fifth Circuit. See *Wright v. Placid Oil Co.*, 107 B.R. 104 (D.C.N.D.Tex.1989); *Mackie v. Production Oil Co.*, 100 B.R. 826 (D.C.N.D.Tex.1988); *In re Wm. B. Wilson Mfg. Co.*, 59 B.R. 535 (Bankr.W.D.Tex.1986); *In re AMWC, Inc.*, 109 B.R. 210 (Bankr.N.D.Tex.1989); and *In re Murchison*, 85 B.R. 37 (Bankr.N.D.Tex. 1987).

The district courts in *Wright* and *Mackie* additionally held that "excusable neglect" must rise to the level of "unique and extraordinary" circumstances such as set forth in *In re O.P.M. Leasing Services, Inc.*, 48 B.R. 824 (D.C.N.Y.1985). *Wright*, supra at 106; *Mackie*, supra at 827.

The Court in *O.P.M.* stated that,

"[e]xcusable neglect is present when a party fails to meet an obligation due to 'unique or extraordinary' circumstances 'which [are] beyond reasonable control' of the delinquent party. The party seeking the extension has the burden in this regard. Three factors are considered in determining whether there is excusable neglect warranting relief: (i) the adequacy of the notice provided, (ii) the source of the delay, and (iii) the prejudice, if any, that will inure to the debtor should the objection be allowed." (Citations omitted).

*O.P.M. Leasing*, supra at 830–831.

Although not specifically citing *O.P.M. Leasing*, the Fifth Circuit has used an equally stringent standard. It has stated, "[u]nder the Bankruptcy Code and rules, creditors play a zero-sum game in which a failure to navigate effectively through the various intricate procedures can mean total defeat. Moreover, because such procedures are thought to be necessary to protect the bankrupt and the creditors, exceptions cannot be made every time a creditor claims hardship. Frequent players in the bankruptcy area, such as the Comptroller, know this and are aware that deadlines are important and should not be heard to complain of unfairness except under the most egregious circumstances. To allow late-filed claims of creditors such as the Comptroller, under the circumstances of this case, would be unfair to all of the creditors who filed on time, despite possible hardships, and whose slice of the bankruptcy pie would be smaller as a result."

*Matter of Robintech, Inc.*, 863 F.2d 393, 398 (5th Cir.1989).

In *Robintech* the Comptroller for the state of Texas was seeking allowance of a claim filed two days beyond the bar date. The Comptroller argued that Bankruptcy Rule 9006(f) provided the Comptroller with a three day extension beyond the bar date as notice of the bar date had been by mail. The Fifth Circuit in rejecting that argument held that the late-filing was not the result of either a delay in receiving notice of the bar date or of a possible incorrect

**168**

address. The court found that this creditor not only was aware of the bankruptcy filing, but failed to show that the thirteen day notice provided was "inadequate or unreasonable". *Robintech*, supra at 397. In this regard the Circuit pointed out that,

> "[t]he vague assertions regarding handling multiple cases and the difficulty of preparing a claim are no more adequate in this context than they were in proving that a possible two-day delay in receipt caused the late filing.
>
> Moreover, the fact that the Comptroller handles myriads of claims such as this, on behalf of the State of Texas, and that such is indeed one of the most important functions of his office, suggests that his staff should be especially proficient in filing claims to protect the public purse. Thus, inability to file claims on time, while perhaps understandable on the part of an inexperienced creditor, is hardly an excuse for this creditor."

*Robintech*, supra at 397.

In the instant case the IRS clearly got notice and conducted its normal operations with regard to its internal claim filing procedures. Further, the prejudice to creditors of allowing the additional $440,000.00 tax claim is obvious. The two bases for the IRS's request to file a late-filed claim are (1) that the debtor listed the debt not on Schedule A–1, but on Schedules A–2 and A–3 under secured and unsecured debt and consequently, the IRS overlooked the scheduled claims; and (2) that the audit division of the IRS failed to notify the IRS bankruptcy specialist assigned to the case so that the disallowed Restoration Tax Credits amounts could be included in its timely filed claim.

However, these are not circumstances which were beyond the reasonable control of the IRS. First, the IRS reviewed the Schedule A–1 in the case. It simply failed to review any schedules other than that. And, even by reviewing only Schedule A–1, the IRS became aware that it was listed as a creditor. The IRS clearly had actual knowledge of the case and notice of the bar date in time to act. Plus, its failure to act was a result of a breakdown in its internal

information gathering procedure. Nothing and no one beyond the IRS' reasonable control caused this problem. The IRS caused its own problem. Further, there is nothing unique or extraordinary about these circumstances. The IRS is not inexperienced. Filing claims in bankruptcy cases is a task at which it should indeed be expert as it is a routine function of their office covered by internal written guidelines and procedures and performed by full time permanent employees. As such, *Robintech, O.P.M.* and the other cases cited compel a conclusion that this is not a case of excusable neglect.

### Conclusion

For the foregoing reasons the Debtor's Objection to Amended Proof of Claim of the Internal Revenue Service will be granted and the United States of America's (Internal Revenue Service) Motion to Allow Late Filed Amended Proof of Claim will be denied. A separate Order of even date herewith will be entered.