**Willie James OLIVER, Plaintiff,**

v.

**RUSSELL CORPORATION, Defendant.**

**No. 94–D–282–E.**

United States District Court,
M.D. Alabama,
Eastern Division.

Dec. 28, 1994.

.... to the full and equal benefit of all laws ....
for the security of persons and property as is
enjoyed by white citizens...."

Willie James Oliver, pro se plaintiff.

Chris Mitchell, Thomas A. Davis, Birmingham, AL, for defendant.

## MEMORANDUM OPINION

DE MENT, District Judge.

Before the court is defendant Russell Corp.'s motion for summary judgment filed September 8, 1994. Defendant contemporaneously filed a brief and tendered evidence in support of its motion. On September 14, 1994, the court issued an order denying defendant's motion as untimely filed; defendant filed its motion two days after the court-ordered deadline based upon an enlargement of time under Fed.R.Civ.P. 6(b).[1] *See* Ct.'s Stamped Order dated Aug. 23, 1994 (granting defendant's motion to and including Sept. 6, 1994). The court, however, in the interest of justice, orally agreed to vacate its order and consider the motion for summary judgment.

On September 14, 1994, plaintiff filed an affidavit in opposition to defendant's motion for summary judgment. After careful consideration of the arguments of the parties, the relevant case law and the record as a

---

1. Counsel for defendant argued that since the court served its stamped order by mail, Fed. R.Civ.P. 6(e) provides an additional three days to respond. The court finds that under the circumstances, counsel's assumption concerning the grace-period is unfounded. The purpose of Fed. R.Civ.P. 6(e) is to "equalize the time for action available to parties served by mail with that afforded those served in person." *Carr v. Veterans Admin.*, 522 F.2d 1355, 1358 (5th Cir.1975).

For example, if all parties were required to act within ten days of notice, a party served personally with notice would have an unfair advantage over a party served by mail. The three-day extension in Rule 6(e) compensates for the possible time discrepancy. *See In re Robintech, Inc.*, 863 F.2d 393, 395 n. 1 (5th Cir.1989). Here, the purpose is immaterial, as the court-ordered extension of time only affected the defendant.

Moreover, fairness does not dictate that defendant have any more time than that already provided by the court's order granting an extension of time. The court finds that its deadline, based upon an extension of time under Fed.R.Civ. 6(b), is exactly that—a deadline.

whole, the court finds that defendant's motion is due to be granted.

## JURISDICTION

Based upon 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 2000e–5(f)(3), the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue. *See* Order on Pretrial Hr'g at ¶ 2.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

In further elaboration on the summary judgment standard, the court has said that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted). Summary judgment is improper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. *See Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

## FACTS

Plaintiff Willie J. Oliver ("plaintiff"), who is proceeding *pro se*,[2] commenced this action on March 7, 1994 based upon racial discrimination. Plaintiff, a black male, alleges that defendant transferred him in January of 1993 from Plant Number 4 to Plant Number 7 in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through 2000e–17, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a. The case arises out of the following undisputed facts contained in the pretrial order and supported by the evidence:

Defendant Russell Corp. is an employer within the meaning of Title VII. Defendant manufactures and sells textile and apparel products. Defendant is headquartered in Alexander City, Ala., where it also operates a number of manufacturing plants. All plants pertinent to the instant action are in Alexander City, Ala. Brock's Aff. at ¶ 2.

Plaintiff began his career with defendant on November 22, 1965. Pl.'s Aff. at 1. In December 1992, plaintiff worked as a roving

---

**2.** Plaintiff's counsel filed a motion on August 19, 1994, to withdraw as the attorney of record. For good cause shown, the court granted the motion in its stamped order dated September 7, 1994. The court notes that at the pretrial conference held on November 8, 1994, plaintiff requested time to seek representation. Thus, the court issued an order on November 9, 1994, giving plaintiff until November 18, 1994, to obtain counsel. The court further directed that plaintiff, after obtaining counsel, and defendant file an amended pretrial order no later than November 21, 1994. Plaintiff telephoned the court on November 14, 1994, stating that he would proceed *pro se* in this action. *See* Ct.'s Order filed November 14, 1994.

The court thereafter received a letter on December 5, 1994, wherein plaintiff stated that he was unable to find an attorney. Plaintiff, in his letter, also provided the names of fourteen attorneys who had declined to represent him.

tender in Plant Number 4. Plaintiff's pay rate was $9.67 per hour. Pl.'s Dep. at 15; Jimmy Brock's Aff. at ¶ 3. On December 22, 1992, Alvin Stamps, also a black male, and plaintiff were drinking rum in the gear room. Pl.'s Aff. at 1. Carolyn Baker, who worked in Plant Number 4 as a Spinner, left her job and went into the gear room.

While in the gear room, plaintiff, Stamps and Baker were discussing defendant's decision to downsize its operations. Pl.'s Aff. at 1. When Baker turned to leave, plaintiff hugged her neck and kissed her on the cheek. Id. Plaintiff admits that he did in fact kiss Baker. Pl.'s Dep. at 32, 33. Immediately thereafter, Baker reported the incident to her supervisor, who spoke with Amy Hill, the personnel manager at Plant Number 4. Jimmy Brock, Hill's supervisor, authorized Hill to conduct an investigation of plaintiff's alleged improper conduct.

The investigation included a meeting between plaintiff, Hill and another plant manager, wherein plaintiff admitted that he had kissed Baker on the cheek and that he had been drinking liquor.[3] Brock's Aff. at ¶ 4 and Ex. 1 attached thereto. Consequently, defendant suspended plaintiff pending an investigation and review of Baker's allegations. Id.

Based upon plaintiff's admission, management concluded that plaintiff had committed an "intolerable offense" (possession of alcoholic beverages in the plant), which was aggravated by the fact that plaintiff had engaged in an unwelcomed touching of a fellow employee.[4] Due to plaintiff's twenty-eight years of service, defendant instead issued a "major reprimand" for plaintiff's misconduct and transferred him to Plant Number 7. The written reprimand dated January 1, 1993 states as follows: "CAUSE OF REPRIMAND: conduct unbecoming an employee when dealing with another employee—Mr. Oliver improperly kissed a female employee on 12–22–92. Separation [i.e., termination] is avoided due to his 27 years with company—

He is being transferred to another plant." Brock's Aff., Ex. 2 attached thereto (brackets supplied).

On January 11, 1993, defendant transferred plaintiff to Plant number 7 where he began working as a print washer, a job with a top rate of pay of $7.21 an hour. Brock's Aff. at ¶ 6. Plaintiff's starting pay was $5 an hour based upon defendant's practice of gradually increasing starting employees' pay to the top rate as they learned the requisite skills. Id. According to defendant, an employee who begins working as a print washer will progress from the starting pay to the top pay in approximately two weeks.

Plaintiff also supplied a list of names of other employees, both black and white, who also were drinking alcohol on December 22, 1992, and were not disciplined. Plaintiff, however, has not tendered evidence that other employees, while drinking on the job, kissed a woman without her consent.

On April 13, 1993, plaintiff filed a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC"), alleging discrimination in connection with his January 11, 1993, transfer from Plant Number 4 to Plant Number 7. Specifically, plaintiff stated that he was "unfairly demoted and disciplined" because of his race and that other similarly-situated white males were not demoted or unfairly treated when charges of sexual harassment were made against them. Plaintiff further claims that defendant employer refuses to place him on light duty work after plaintiff suffered an on-the-job injury[5] while similarly-situated white employees have been assigned such work. Plaintiff has not filed any other charges of discrimination with the EEOC. The EEOC issued a right-to-sue letter on December 6, 1993.

## DISCUSSION

### I. Scope of EEOC Charge

■ Before addressing the merits of plaintiff's claim, the court will address defendant's

---

3. Plaintiff also admitted to the same at the pretrial conference held on November 8, 1994.

4. Defendant's "Discipline & Discharge Procedure" provides that an intolerable offense includes consumption of alcoholic beverages in the

plant. Pl.'s Aff., Def.Ex. 16 attached thereto. The penalty for this offense is discharge. Id.

5. See infra, footnote 6.

claim that many of the allegations in plaintiff's judicial complaint are not contained within his EEOC charge and, thus, should be dismissed as a matter of law. The scope of a judicial complaint under Title VII is limited to the acts of discrimination contained in the EEOC charge or claims " 'like or related' " to the claims raised in the charge. *Coon v. Georgia Pacific Corp.*, 829 F.2d 1563, 1569 (11th Cir.1987); *See also Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970) (holding that "the allegations in a judicial complaint ... 'may encompass any kind of discrimination like or related to the allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission' ").

▪ The only claim in the complaint which plaintiff also raised in his EEOC charge is that defendant "arbitrarily transferred," "demoted" and "disciplined" him because of his race. Pl.'s Dep., Def.'s Ex. 2 attached thereto. Nowhere in plaintiff's EEOC charge does he mention anything other than his belief that he was transferred to a position with lower pay due to racially differential treatment in discipline. By limiting the scope of his charge, plaintiff has waived any right to allege Title VII claims due to discriminatory treatment in "promotions, discharge[6], retention, compensation ... and other terms and conditions of employment." *See* Pl.'s Compl. at ¶ 11. Similarly, plaintiff has waived his right to assert that defendant exercised a general policy of discriminating against blacks with respect to recruitment, hiring, compensation, promotions, discipline,

discharge and fringe benefits. *Id.* at 14. Therefore, all of plaintiffs Title VII claims except those related to a discriminatory transfer are due to be dismissed as a matter of law.

▪ Alternatively, plaintiff's claims raised in the complaint, other than the discriminatory transfer charge, are due to be dismissed because they were not raised in the pretrial order. The pretrial order, "which supersedes the pleadings," controls the subsequent action of the litigation. *McGinnis v. Ingram Equip. Co., Inc.*, 918 F.2d 1491, 1494 (11th Cir.1990). The parties are bound by their order and may not introduce at trial issues excluded in the pretrial order. *See Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1015 n. 34 (11th Cir.1982). Here, the parties prepared a joint pretrial order pursuant Fed.R.Civ.P. 16(e) and the court's order dated September 30, 1994. The court then issued the pretrial order on November 14, 1994. Plaintiff's only contention as stated in the pretrial order is that defendant "transferred [plaintiff] from Plant Number 4 to Plant Number 7 in January 1993 because of his race...." Order on Pretrial H'rg at ¶ 5(a). *See also* Pl.'s Dep. at 28, wherein plaintiff asserts that his sole complaint relates to the fact that he was transferred to a job with lower pay.

As to plaintiff's discriminatory transfer claim, however, the court finds that plaintiff has properly invoked the court's jurisdiction by exhausting his administrative remedies.

---

**6.** For example, a portion of plaintiff's deposition testimony revolves around his alleged constructive discharge. Plaintiff in January 1993 injured his back on the job. Plaintiff was examined by a physician and was off work from January 12–18.

On January 18, 1993, plaintiff's physician released him to return to light-duty work. Plaintiff reported to defendant's central personnel office and requested to return to his former job as a Roving Tender in Plant Number 4. His request was denied, however, allegedly because the job did not meet his doctor's work restrictions and was contrary to the terms of the discipline that had been imposed.

Thus, from January 1993 through June 1993, plaintiff did not work for defendant allegedly because no position met his physician's work restrictions. In July of the same year, defendant allegedly offered plaintiff several jobs meeting his

doctor's work restrictions, each of which plaintiff declined. Later in July, plaintiff was offered a job at the distribution center, the requirements again meeting his work restrictions. Plaintiff apparently refused the job at the distribution center for personal reasons.

After turning down the distribution center job, plaintiff met with the vice-president of personnel and the employee relations manager in Alexander City, Ala., to discuss his employment status. Once again, plaintiff requested to be transferred back to his former job at Plant Number 4, which defendant refused.

Beginning in March 1993, plaintiff's doctor had gradually decreased his work restrictions. On June 28, 1994, after plaintiff had refused several offers to return to work at several jobs, defendant officially terminated plaintiff.

Plaintiff timely filed the charge of discrimination as to the alleged discriminatory transfer and after receiving the right-to-sue letter, timely instituted this action. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973) (stating that federal courts have jurisdiction to hear Title VII claims when a plaintiff has (1) filed timely charges of employment discrimination with the EEOC **and** (2) receives and acts upon the Commission's statutory notice of the right to sue).

The court also notes that plaintiff in the pretrial order has not alleged that defendant violated his rights under 42 U.S.C. § 1981. Thus, for the same reasons discussed above, the court finds that plaintiff has abandoned the § 1981 claims contained in the complaint.

Finally, the court notes that while defendants did not raise the issue, the court has serious doubts as to whether plaintiff's complaint meets the pleading requirements under the *Federal Rules of Civil Procedure.* As stated in Fed.R.Civ.P. 8(a)(2), the complaint must set forth a "short and plain statement ... showing that the pleader is entitled to relief." Rule 8(a)(2). *See Ogletree v. McNamara,* 449 F.2d 93, 98–99 (6th Cir. 1971) ("[s]omething more than [a] conclusory allegation of systematic racial discrimination is required. Some facts as to when, how, to whom, and with what results such discrimination has been applied" are minimum requirements of Rule 8(a)). Here, plaintiff's complaint asserts only broad conclusory allegations and fails to show even the shortest statement of facts to back up the allegations. The court now turns to the merits of plaintiff's discriminatory transfer claim.

## II. *Title VII: Discriminatory Transfer*

■ In an action alleging disparate treatment under Title VII, plaintiff must prove an intentional discriminatory motive. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2754, 125 L.Ed.2d 407 (1993). A plaintiff may prove intentional discriminatory motive by presenting "direct evidence" of racial animus. *Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 771–72 (11th Cir.1982). Absent direct evidence, as is the case here, a plaintiff can establish intentional discrimination under the burden-shifting analysis set forth in *McDonnell Douglas, supra,* and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ Under the *McDonnell Douglas* and *Burdine* framework [7], plaintiff must

> create an inference of discrimination by establishing a prima facie case. If he [or she] does so, the defendant must "articulate some legitimate, nondiscriminatory reason for the employee's rejection." The plaintiff may then attempt to show that these reasons are pretextual or may present other evidence to show that discriminatory intent was more likely the cause of the employer's actions.

*Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1184 (11th Cir.1984) (citations omitted).

Accordingly, plaintiff must first meet his burden of establishing a prima facie case of a discriminatory transfer. Plaintiff, in claiming that he was unfairly transferred for misconduct, must establish the following: (1) that he belongs to a protected class; (2) that he was qualified for the position of roving tender; (3) that he was transferred from that position; and (4) "that the misconduct for which [he] was [transferred] was nearly identical to that engaged in" by a white employee who was not transferred.[8] *Davin v. Delta*

---

**7.** The Supreme Court of the United States adopted this analysis to implement "[t]he language of Title VII," which "makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." *McDonnell Douglas,* 411 U.S. at 800, 93 S.Ct. at 1823.

**8.** The court notes that plaintiff also could establish the fourth element of his prima facie case by showing that his replacement was not a member of a protected class, i.e., that defendant filled plaintiff's position of roving tender with a white employee. *Green v. School Bd. of Hillsborough County,* 25 F.3d 974, 978 (11th Cir.1994). However, plaintiff has failed to present any evidence that an employee outside the protected class replaced him. Indeed, defendant even admits that it did not hire a replacement for plaintiff's position because the company was downsizing its operations. While the elimination of plaintiff's position also could possibly lead to an inference

*Air Lines, Inc.,* 678 F.2d 567, 570 (5th Cir. Unit B 1982) (brackets supplied). *See also, McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976) (holding that an employer would violate Title VII if it discharged a black employee who participated in a theft while retaining a white employee who was guilty of the same offense).

Here, the first three elements are not in dispute: Plaintiff, who is black, is obviously within a protected class; there is no evidence tending to show that plaintiff was not qualified for the position; and defendant readily acknowledges that it transferred plaintiff to Plant Number 7 to work as a Print Washer.

As to the fourth element, the court finds that plaintiff has failed to show that the conduct of other employees was "nearly identical" to plaintiff's. Defendant transferred plaintiff after a thorough investigation of Baker's allegation that plaintiff kissed her without her consent. The court recognizes that other black employees who were drinking were treated differently in that they retained their jobs and were not transferred to a position with lower pay. Plaintiff's transfer, however, was aggravated by the fact that he kissed a co-employee without her permission. In fact, the primary reason articulated by defendant for the transfer was because plaintiff inappropriately kissed a female employee. The record is devoid of any evidence that any of the other employees, black or white, who were drinking alcohol, such as Stamps, also made sexual advances to another employee. Plaintiff has failed to rebut defendant's assertion that plaintiff's consumption of alcohol was exacerbated by improper sexual conduct. *See Pace v. Southern Ry. Sys.,* 701 F.2d 1383, 1391 (11th Cir.), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983) (holding that "a plaintiff" ... cannot rely on attenuated possibilities that a jury would infer a discriminatory motive, but rather must come forward with sufficient evidence to establish a prima facie

case and respond sufficiently to any rebuttal by the defendant to create a genuine issue of material fact).

Accordingly, plaintiff has not proved an essential element of his case because he cannot demonstrate that a white employee engaged in similar misconduct and was given more lenient treatment. In the absence of evidence pointing to racial animus as a motivation for plaintiff's transfer, the court finds that summary judgment is due to be granted in favor of defendant.

Finally, much of defendant's evidence, discussed *supra,* goes to its burden of articulating a nondiscriminatory reason for transferring plaintiff. Thus, even assuming, *arguendo,* that plaintiff established a prima facia case, the court still would be compelled to find for defendant based upon the evidence in the record. Because plaintiff has failed to present any evidence that defendant's reason for transferring him, i.e., kissing a female employee without her consent, was pretextual, defendant has satisfied its burden of production under the *McDonnell Douglas/Burdine* test. Accordingly, summary judgment would still be granted in favor of the defendant.

## CONCLUSION

Accordingly, and for good cause shown, summary judgment is due to be GRANTED in favor of defendant Russell Corp. and against plaintiff Willie J. Oliver.

A judgment in accordance with this memorandum opinion shall be entered separately.

---

of discrimination, plaintiff has failed to argue or present evidence tending to show a discriminatory intent based upon a reduction-in-workforce. *See Mitchell v. Worldwide Underwriters Ins. Co.,* 967 F.2d 565, 567 (11th Cir.1992) (setting forth elements necessary to establish a prima facie

case for reduction-in-workforce). Rather, plaintiff's only argument is that he should not have been transferred because other white employees were not transferred for committing similar conduct.