In re FAIRCHILD AIRCRAFT
CORPORATION, Debtor.

Christa BORSDORF, Individually and as Personal Representative of the Estate of Ralph Borsdorf; and Johanna Borsdorf, Plaintiffs,

v.

FAIRCHILD AIRCRAFT
CORPORATION,
Defendant.

Bankruptcy No. 90–50257–C.
Adv. No. 91–5002C.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

June 27, 1991.

Sheinfeld, Maley & Kay, P.C. by Todd Barth, Houston, Tex., for Bettina M. Whyte, Fiscal Agent.

Ronald Hornberger and David Benjamin, Plunkett, Gibson and Allen, Inc., San Antonio, Tex., for plaintiffs.

Robert F. Ruckman and David T. Moran, Jackson and Miller, Dallas, Tex., for defendant.

## MEMORANDUM DECISION

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing the Motion of Fairchild Aircraft Corporation ("Fairchild") or ("Defendant") to Dismiss the Claims of Plaintiffs Christa Borsdorf, Individually and as Personal Representative of the Estate of Ralph Borsdorf, and Johanna Borsdorf ("Plaintiffs"). The pleading actually filed in the state court action was entitled "Defendant's Plea to the Jurisdiction, Motion to Dismiss and Original Answer Subject Thereto." In that pleading, Defendant made the following pleas: 1) a denial that the state court had subject matter jurisdiction; 2) a motion to dismiss for *forum non conveniens;*[1] 3) an affirmative defense of discharge in bankruptcy; and 4) a general denial as permitted by the Texas Rules of Civil Procedure. The state court action was removed to this Court by the Fiscal Agent appointed under the confirmed plan in the Fairchild bankruptcy, Ms. Bettina Whyte.

This Court, at a status hearing on the removed action, set a hearing on the Defendant's state court Motion to Dismiss, stating that it would treat the motion as though it had been filed in federal court as a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6).

## ANALYSIS

### I. Factual Background

On or about February 8, 1988, Mr. Ralph Borsdorf[2] was killed when a Fairchild Metroliner III aircraft crashed near Kettwig, West Germany. On January 31, 1990, his wife and mother, both residents of Germany, filed suit against Fairchild Aircraft Corporation d/b/a Fairchild and Swearingen Aviation Corporation d/b/a Swearingen for wrongful death and survival claims in Bexar County, Texas. On February 1, 1990, Fairchild filed bankruptcy.[3] On February 15, 1990, this Court approved the appointment of Ms. Bettina M. Whyte as Chapter 11 Trustee who served in that capacity through confirmation in late September of 1990. After the partial sale of estate assets and liabilities to Fairchild Acquisition under the confirmed plan, the proceeds from that sale and the remaining assets and liabilities were transferred into a liquidating trust over which Ms. Whyte now presides as Fiscal Agent.

Neither the schedules and statements of affairs filed by the Debtor nor the amendments filed some months later by the Trustee list any claim by either these Plaintiffs or Mr. James L. Branton (Branton & Hall, P.C.), their counsel at that time. None of the creditor lists filed by the Debtor, and none of the service lists filed by Debtor or the Trustee or their attorneys contained Mr. Branton's or the Plaintiffs' names and addresses. The Trustee has no record of service by the Debtor or the Trustee upon the Plaintiffs or Mr. Branton of the motion to establish the bar date to file proof of claim, the order setting a bar date, the notice of hearing on the original or the first amended disclosure statement, the notice of hearing on confirmation of the amended plan, or the solicitation package containing ballots for acceptance or rejection of the amended plan. The Plaintiffs thus have not received notice of relevant motions, orders or hearings as specified by the Bankruptcy Code and Rules. At least the debtor and its bankruptcy counsel were aware of the claim against the estate, however, as Plaintiffs' counsel received a letter from the law firm then representing Fair-

---

1. The motion to dismiss for *forum non conveniens* is not addressed in this decision.

2. Mr. Borsdorf was Ms. Christa Borsdorf's husband and Ms. Johanna Borsdorf's son.

3. Fairchild's bankruptcy filing was totally unrelated to the initiation of the Borsdorfs' lawsuit.

child on February 12, 1990, informing Plaintiffs of the bankruptcy filing, the case number, the court and its location, and advising them that their lawsuit was thus stayed by the automatic stay.

On June 22, 1990, Mr. Tom Davis, counsel for nineteen other German claimants against Fairchild arising out of the same aircraft accident in Germany, notified these Plaintiffs that the other nineteen cases had been removed by Fairchild to federal court. On June 28, 1990, Plaintiffs' attorney discussed the removal with Ms. Mina Clark, bankruptcy counsel for the nineteen other German claimants. In a letter dated July 2, 1990, Mr. Branton told Ms. Clark of Plaintiffs' decision not to seek to lift the automatic stay, fearing that Fairchild would then remove his lawsuit as well.

In a letter dated July 9, 1990, Ms. Clark told Mr. Branton that "you have to do what you determine is in your clients' best interests." By this same letter, Ms. Clark transmitted Fairchild's first Disclosure Statement and the Trustee's proposed Plan of Reorganization. The Disclosure Statement contained information regarding the balloting and voting deadline for the Plan and specifically cautioned that creditors of Fairchild would be entitled to vote on the Plan only if they "... filed a proof of claim on or before the last date set by the Bankruptcy Court ...", which in this case is August 2, 1990." The Disclosure Statement further provided:

CREDITORS ARE URGED TO REVIEW IN FULL THE PLAN AND THE DISCLOSURE STATEMENT TOGETHER WITH ALL EXHIBITS ATTACHED HERETO PRIOR TO VOTING ON THE PLAN AND ARE URGED TO CONSULT LEGAL COUNSEL TO INSURE COMPLETE UNDERSTANDING OF THE PLAN AND THE DISCLOSURE STATEMENT. THIS DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF CREDITORS OF THE DEBTOR TO ENABLE SUCH CREDITORS TO MAKE AN INFORMED DECISION ABOUT THE PLAN.

The Disclosure Statement also stated that all general unsecured tort claims would be satisfied from any insurance proceeds which may become payable on behalf of Fairchild, but only when each such general unsecured tort claim became an "Allowed Claim," defined as any claim or interest "proof of which is filed with the Bankruptcy Court on or before August 2, 1990 or for a particular Claim, within such other time as the Bankruptcy Court shall have set for such claims if different than August 2, 1990...." The bar date for all unsecured claims was August 2, 1990.

Plaintiffs received the Disclosure Statement and the proposed Plan more than twenty days prior to the bar date. This Disclosure Statement and Plan had not yet been approved, nor had the plan yet been confirmed, but the same provisions appeared in the versions of the Disclosure Statement and the Plan which were eventually approved or confirmed. The First Amended Disclosure Statement retained the bar date of August 2, 1990. The First Amended Plan of Reorganization retained the definition of "Allowed Claim" as one in which a proof of claim was filed on or before August 2, 1990.

Plaintiffs admit that they did not file a proof of claim at any time during the bankruptcy. In fact, Plaintiffs made no inquiries regarding the Fairchild bankruptcy prior to December, 1990, over three months after the plan was confirmed. The only action taken by Plaintiffs to pursue their claims against the Fairchild bankruptcy estate was to employ Plunkett, Gibson & Allen to contest the possible dismissal of this cause of action by this court. Plaintiffs did not actually enter an appearance in the bankruptcy case until February 25, 1991, at the status hearing on removal. Plaintiffs did not file a request for service of notice or pleadings in the bankruptcy case prior to March 22, 1991. Plaintiffs did not file their Motion for Enlargement of Time to File Proof of Claim until March 27, 1991, the same day as the hearing on the Defendant's Motion to Dismiss.[4]

---

4. The Motion for Enlargement of Time to file a proof of claim has a direct bearing on the disposition of the motion to dismiss. If a late claim can be filed in this case, then dismissal of the case would no longer be proper. With the consent of the parties, the motion for enlargement of time is therefore also addressed in this decision.

## II. Outline of Arguments

Fairchild asserts that Plaintiffs had actual notice of the bar date for filing proofs of claim. Because Plaintiffs did not file a proof of claim, Fairchild argues that Plaintiffs are now barred from asserting their claim against the Defendant, so this adversary action should be dismissed. Plaintiffs counter that they were known creditors at the time of the bankruptcy filing and that, because they were not formally served with notice of the bankruptcy, or any of the relevant motions, orders or hearings by the Defendant, the Trustee or the Court in accordance with the Code and Rules, and because they were not included on any of the matrices, Plaintiffs were deprived of sufficient notice of the claims filing bar date to which they claim they are entitled, so that the case should not be dismissed.[5] Plaintiffs assert these same facts and reasoning to support their Motion for Enlargement of Time to File a Proof of Claim.

## III. Claim Against the Estate Versus Cause of Action Against the Defendant

Defendant asserts that because the Plaintiffs have not filed a proof of claim and have not met the burden of establishing excusable neglect so as to allow a late filed proof of claim the Plaintiffs cannot participate in a distribution under the plan. Defendant argues that, therefore, the Plaintiffs have no cause of action against the Defendant, so that their lawsuit should be dismissed. This argument, though facially appealing, is actually imprecise, because it fails to distinguish between a "claim" against a bankruptcy estate and a cause of action against a defendant/debtor. The two are not always the same.

The Plaintiffs' pre-petition cause of action arises from the crash in Germany. The parties to that suit are Christa Borsdorf, et al. as plaintiffs and Fairchild Aircraft Corporation et al. as defendants. The pleadings of course do not specify whether "Fairchild Aircraft Corporation" refers to the pre-petition Corporation, the post-petition Bankruptcy Estate, the post-confirmation liquidating trust's Fiscal Agent, the subsequent purchaser, Fairchild Acquisition, or the leftover corporate shell of the pre-petition debtor corporation. This lack of precision, while certainly no one's fault, nonetheless leads to some confusion.

█ Filing a bankruptcy creates an estate. 11 U.S.C. § 541(a). When a trustee is appointed, all property of this estate is legally owned and operated by the trustee for the benefit of the creditors. A "claim" against this estate is a "right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured" against the pre-petition debtor. 11 U.S.C. § 101(4)(A). Claims are allowed against property of the estate in a chapter 11 case either by being scheduled by the debtor or by the claimholder's filing a proof of claim. *See* Bankr.R. 3001, 3002, 3003, 3004; 11 U.S.C. § 1111(a). If the claim has not been scheduled by the debtor, the creditor's failure to timely file a proof of claim will usually prohibit that creditor from participating in the distribution of estate assets. *See* R.Bankr.P. 3003(c)(2).

█ A claim against the estate is thus not the same as the cause of action against the pre-bankruptcy debtor entity. One who fails to file a claim against the estate still has the cause of action, but the bankruptcy process limits what one can *do* with that cause of action. In most cases, regardless of the validity of the cause of action, a creditor who fails to file a claim will be barred from sharing in the distribution of the bankruptcy estate assets. Also, in the usual case, the bankruptcy discharge will prevent the creditor from pursuing the cause of action against the debtor if the debtor is an individual, or a reorganized business. 11 U.S.C. § 1141(d).

█ However, not every debtor gets a discharge. For example, corporate debtors which are liquidated by the plan do not

---

**5.** Plaintiffs add that all they want to do is go against the insurance proceeds, so that the estate's assets are not really involved here. That argument is addressed in this decision and is rejected.

receive a discharge. 11 U.S.C. § 1141(d)(3). Thus, even though a creditor has failed to file a proof of claim in such a case, and still cannot participate in the distribution of estate assets, the lack of a discharge means that the creditor is not barred from proceeding against the corporation itself and whatever assets might subsequently come into its possession.

Unfortunately for the creditor, all that is left of the corporation post-confirmation is a corporate shell, empty of assets. As with most liquidating Chapter 11 cases, the bankruptcy estate assets, as they were in this case, were not revested in the debtor but were instead transferred to a trust, managed by a Fiscal or Liquidating Agent. Congress designed Section 1141(d)(3) to discourage trading in corporate shells. H.R.Rep. No. 595, 95th Cong. 1st Sess. 384 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. It achieves that goal by freighting the shell with all the claims, so that any claims or portions of claims not paid by the liquidation will attach to the shell, making the shell much less attractive for use in starting up another enterprise.[6] Thus, while there is no legal impediment to pursuing the corporation, there is precious little economic incentive.

■ It is thus not quite correct to say that the lawsuit must be dismissed because no proof of claim was filed in the bankruptcy. It is more correct to say that the bankruptcy estate and its successor liquidating trust is not a party to that lawsuit, and none of the plan's provisions regarding the payment of claims such as the Borsdorfs' extend to this lawsuit—unless a late proof of claim is permitted to be filed.

■ One of the benefits conferred on tort claimants with allowed claims against the estate is that Fairchild's insurance carriers have a duty to defend such claims. The carrier's duty to defend Fairchild was an asset of the estate which, under the plan, was transferred to the trust now

managed by the Fiscal Agent. *See A.H. Robins v. Piccinin,* 788 F.2d 994, 1001 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986) (insurance contract is property of estate). The duty to defend no longer extends to the pre-petition corporation, now a mere corporate shell of its former self. Unfortunately for Plaintiffs, only those tort claims with timely filed proofs of claim have allowed claims, for which the insurance carrier has a duty to defend the estate. Unless these tort claimants are permitted to file a late claim, they will be limited to their rather worthless cause of action against the corporate shell of Fairchild, a claim for which there is no insurance coverage. We turn then to whether a late claim should be entertained at this late date in the case.

## IV. Excusable Neglect: Constitutional and Statutory Due Process

■ In Chapter 11 proceedings, proofs of claim must be filed within the court-prescribed time period. R.Bankr.P. 3003(c)(2). Generally, parties who fail to file a proof of claim are not treated as creditors with respect to such claim for purposes of voting or distribution. R.Bankr.P. 3003(c)(2). Rule 9006(b) provides, however, that the court may enlarge the time in which to file a proof of claim if the court finds that the failure of the creditor to file earlier was the result of "excusable neglect." Bankr.R. 9006(b). Plaintiffs have the burden to prove excusable neglect or cause to avoid the preclusion of their claims. *See Matter of Robintech, Inc.,* 863 F.2d 393, 397 n. 2 (5th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 55, 107 L.Ed.2d 24 (1989).

The Plaintiffs in this case acknowledge that, by virtue of the letter from Ms. Clark to Mr. Branton enclosing the first Disclosure Statement, they had actual knowledge of the bar date in this case.[7] Plaintiffs

---

**6.** The protection is especially significant with respect to publicly traded companies. Without it, entities would be tempted to pick up the shell, issue new stock, and start a new business without the dead weight of old debt, undermining not only the integrity and *bona fides* of the

bankruptcy system but also the underlying salutary function of the securities laws.

**7.** The bar date was set by independent order, not by the Disclosure Statement. Thus, the fact that the Disclosure Statement in question had

contend that the failure of the Defendant, the Trustee and the Clerk's office to *send* the Plaintiffs notice of the bankruptcy and the bar date is a violation of their rights to both constitutional and statutory due process and that these violations support a finding of excusable neglect. *See In re Herd,* 840 F.2d 757, 758 n. 2 (10th Cir.1988) (notice which is constitutionally defective will satisfy a "cause" standard under Rule 3003(c)(3)). We turn first to the issue of constitutional due process.

## A. Constitutional Due Process

It is true that many cases addressing the issue of constitutional due process hold that a party has satisfied due process only if the notice sent is reasonably calculated to be received. *See e.g., Tulsa Professional Collection Services v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988); *Greene v. Lindsey,* 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982); *Schroeder v. City of New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962); *Walker v. City of Hutchison,* 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956); *City of New York v. New York, N.H. & H.R. Co.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953); *Mullane v. Central Hanover Bank & Trust Co. et al,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Robintech, Inc.,* 863 F.2d at 393; *Cf. In re Spring Valley Farms, Inc.,* 863 F.2d 832, 834 (11th Cir.1989). In all of these cases, the complaining party did not have *actual notice,* forcing the court into an analysis of whether the notice that was at least *sent* was one reasonably calculated to reach all interested parties, which reasonably conveyed all of the required information, and which permitted a reasonable amount of time to respond. *See Robintech, Inc.,* 863 F.2d at 396. If the effort was properly made, the courts hold that

constitutional due process requirements have been satisfied. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. at 314–15, 70 S.Ct. at 657.[8]

The constitutional scrutiny into how notice was sent, offered in these cases, does not apply when the complaining party already *has* actual notice, because the concern that an action is being taken without the party's having had an opportunity to protect itself, the *raison d'etre* for the constitutional protection, is allayed. *See Mullane,* 339 U.S. at 314, 70 S.Ct. at 657 (right to be heard is worthless unless one is informed about matters pending). Notice, no matter how serendipitous, is still notice, and we are no longer in constitutional waters unless the notice has failed to give the complaining party an *adequate* opportunity to be heard. We therefore still must examine the facts of the case under the *Robintech* test, not to see if the debtor sent the notice but to see if the notice that was received reasonably conveyed the relevant information in time for the Plaintiffs to respond. *See Robintech,* 836 F.2d at 396.

Due process of law, under the Fifth or the Fourteenth Amendment, focuses upon the opportunity to be heard, notice being the most essential condition of such opportunity. *Simon v. Craft,* 182 U.S. 427, 431, 21 S.Ct. 836, 837, 45 L.Ed. 1165 (1901). Constitutional due process requires that notice be fundamentally fair and reasonably calculated to apprise interested parties of what is occurring. *In re CRC Wireline, Inc.,* 103 B.R. 804, 807 (Bankr.N.D.Tex. 1989) (citing *Mullane,* 339 U.S. at 314–15, 70 S.Ct. at 657); *In re Spring Valley Farms, Inc.,* 863 F.2d 832, 834 (11th Cir. 1989) (mere knowledge of the bankruptcy insufficient to place creditor on inquiry notice, so that such creditor's claim is not discharged by Section 1141).

not actually been approved by the court does not mean that the information contained therein was not accurate. Plaintiffs could just as easily have acquired this actual knowledge from an offhand remark by Ms. Clark to Mr. Branton as from the Disclosure Statement.

**8.** The precise requirements imposed for the "sending" of notice depend on whether the creditor is known or unknown to the debtor. *See*

*Mullane,* 339 U.S. at 318, 70 S.Ct. at 659. Here, of course, the creditor was known, a fact emphasized by the Plaintiffs. However, whether the creditor is known or unknown is irrelevant if the creditor has received actual notice, regardless of how or by whom it was achieved, even if by accident by someone other than the debtor.

■ It has been held that " 'known or identifiable creditors' ... have a right to assume that they will receive all of the notices required by statute before their claims are forever barred. Such persons, even after receiving actual notice of the bankruptcy, have no duty to inquire about further court action." *Tulsa Professional Collection Services v. Pope*, 485 U.S. at 491, 108 S.Ct. at 1348. However, claims can be forever barred despite the debtor's failure to give the requisite statutory notice if the creditor possessed actual notice of particular developments within the bankruptcy proceeding adequate to permit the creditor to protect itself. *See In re Intaco Puerto Rico, Inc.*, 494 F.2d 94, 99 n. 11 (1st Cir.1974); *In re CRC Wireline, Inc.*, 103 B.R. at 807. The court in *CRC Wireline* noted that "under constitutional due process requirements, a known creditor must receive actual notice of a Bar Date in order for such creditor's claim to be forever barred." *In re CRC Wireline, Inc.*, 103 B.R. at 807; *see In re Spring Valley Farms, Inc.*, 863 F.2d at 835.

■ The Plaintiffs here in fact had actual notice not only of the bankruptcy case in general but of the bar date in particular, a peculiar feature of this case which distinguishes it from these other cases.[9] The serendipitous notice received by Plaintiffs satisfies constitutional due process, precisely because Plaintiffs were afforded nearly three weeks within which to file a proof of claim, knowing full well at that point that, if they did not, they faced the prospect of being barred from participating in all of the plan's benefits, including the recourse to insurance coverage which the plan proposed to provide. Constitutional due process is first of all a protection and second of all a duty. That the duty was not dis-

charged here means little unless, as a result, the complaining party has actually been denied the Constitution's protections. That is not the case here.

Plaintiffs' assertion of excusable neglect premised on a denial of constitutional due process thus fails. We turn now to the inquiry regarding statutory due process.

**B. Statutory Due Process**

■ The various noticing requirements imposed by the Bankruptcy Code and Rules of Bankruptcy Procedure are designed to ensure that creditors are reasonably calculated to receive notice of important actions in a bankruptcy case which could affect their property rights. *See* 11 U.S.C. §§ 521(1), 1106(a)(2) and (3); R.Bankr.P. 1007(a); 2002(a) and (f); 3003(c); 3016(c); 3017(a) and (d); Local R.Bankr.P. 1007(a)(1) and (6). It is without question that the bankruptcy estate in this case failed to comply with numerous statutory noticing provisions with respect to these Plaintiffs.[10] This fact alone makes out a *prima facie* case for excusable neglect under Bankruptcy Rule 9006(b), because to hold otherwise would encourage debtors to violate the statutory notice requirements with impunity. That is not the end of the analysis, however, for the *prima facie* finding is rebuttable, and is rebutted here.

■ Parties with actual knowledge of the bankruptcy filing of course have a right to assume that they will also receive the statutory "reasonable notice" of significant events in the case before their claims are forever barred. *See City of New York*, 344 U.S. at 297, 73 S.Ct. at 301; *In re Spring Valley Farms, Inc.*, 863 F.2d 832, 835 (11th Cir.1989); *see also In re Harbor Tank Storage Co.*, 385 F.2d 111, 115 (3rd

---

**9.** The Eleventh Circuit in *Spring Valley Farms*, for example, lays down one of the harsher notice decisions among recently reported cases, yet even that court observed that "[o]ur answer might be different if plaintiffs had actual knowledge of the bar date itself rather than merely a general knowledge of the initiation of bankruptcy proceedings...." *Id.* at 835 n. 2.

**10.** Fairchild failed to provide: 1) notice of the bankruptcy and inclusion on the schedules, statement of affairs and creditors list; 2) notice

of the Section 341 creditors meeting; 3) notice of the claims filing bar date; 4) notice of the time fixed to accept or reject a proposed plan; 5) notice of the time fixed for filing objections to and the hearing on approval of the disclosure statement; 6) notice of the time fixed for filing objections to and the hearing on confirmation of the plan; 7) notice of the order for relief; and 8) notice of entry of an order confirming the Chapter 11 plan.

Cir.1967) (actual knowledge of pending reorganization proceedings does not create an affirmative obligation to file claim without waiting for appropriate notice). These cases rightfully hold that actual notice of the bankruptcy is not of itself enough to place a creditor on inquiry notice.

It is a different matter entirely, however, when a creditor has actual notice not just of the bankruptcy but of the claims filing bar date. One recent case has held that a creditor with more than mere knowledge of the bankruptcy is bound by the court imposed claims filing bar date, regardless of the fact that notice had not been sent pursuant to the Bankruptcy Code and Rules. *See In re Coastal Alaska Lines, Inc.*, 920 F.2d 1428, 1431 (9th Cir.1990). The creditor there did *not* have actual knowledge of the bar date, nonetheless knew that it had not been named as a creditor, knew that it would not be sent statutory notices, had sufficient notice and reasonable opportunity to appear as a creditor and to receive statutory notice, yet took no further action. The court determined that the creditor did not act reasonably in waiting to receive notice and so had failed to establish excusable neglect to permit a late claim to be filed. *Id.*

■ These Plaintiffs had knowledge that they were not on the creditor matrix (which was apparent not only when they had not received formal notice of the bankruptcy but especially when they received a copy of the disclosure statement and plan from another source) and knowledge that the disclosure statement and plan provided for the avoidance of their claim if a proof of claim was not filed by August 2, 1990. A creditor, like the Plaintiffs in this case, who has actual knowledge of the bar date, be it by formal notice or other wise, certainly has the reasonable notice required

by *City of New York, Spring Valley Farms*, and *Harbor Tank Storage*, and far more notice than did the creditor in *Coastal Alaska Lines*. Plaintiffs did not act reasonably in waiting to receive notice of the bar date for filing proofs of claim. They knew enough to know that they would not be allowed to participate in the plan. For better or worse, Plaintiffs sat on their rights to be included in the plan.[11]

There are strong policy considerations which support the rule announced in *Coastal Alaska Lines*. Permitting a creditor such as these Plaintiffs to wait in reliance on the estate's failures to afford the requisite official notices does not punish the estate or the trustee so much as it punishes innocent creditors and other third parties who relied on the claims bar when they voted on the plan.[12] The insurance carrier, for example, voted for this plan, in the belief that the tort claims disclosed were the only claims for which it would be required to cover and represented the extent of its exposure. If this court were to now allow Plaintiffs' claims, the carrier would be well within its rights to complain that this is no longer the plan for which it voted and that it should now be released from the duty to defend which it voluntarily shouldered under the plan. If so excused, the estate's assets would then be exposed to this claim, dramatically diluting the recovery other unsecured creditors had expected to receive under the plan. With everyone justifiably complaining that the deal had been substantially altered with the entry of this new claim, confirmation itself might come unravelled, threatening the integrity of the sale to Fairchild Acquisitions accomplished by that plan. A careful balancing of the equities here leads to the ineluctable conclusion that those equities do not favor these Plaintiffs.

11. In all likelihood, the decision not to file a proof of claim was intentional, motivated by some of the same concerns that kept the Plaintiffs from seeking to lift the stay during the bankruptcy case. Filing a proof of claim also would, in all likelihood, have eliminated their entitlement to a jury trial on their claim, a distasteful result for any personal injury lawyer. *See In re Langenkamp*, — U.S. —, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990).

12. In this case, these other interested parties include 1) multiple plaintiffs in various tort claims; 2) multiple insurance companies with duties to defend and with vested duties to limit liability to the policy limits; and 3) the Chapter 11 Trustee whose duty it is to insulate the estate from liability above the policy limits.

The bar date in any bankruptcy case not only allows claimants to benefit by participating in the plan, but also benefits other parties as well. A bar date fixed before confirmation makes it that much easier for everyone to calculate the relative recovery they can expect to receive under a given plan, or, in the case of third parties such as the insurance carrier, the relative exposure they will have under the plan. The Plaintiffs' claims were not contemplated when the insurance carriers, other tort claimants, unsecured creditors, and others voted on this plan. Including them now upsets legitimate expectations, solely to satisfy Plaintiffs' purely technical complaint about notice. That is neither good law nor good policy, and should not be permitted here.

This court of course does not condone Fairchild's or any other debtor's failure to comply with the statutory due process obligations imposed by the Bankruptcy Code and Rules. Ensuring notice which is reasonably calculated to be received in time to protect one's rights is the driving policy motivation behind the wide array of statutory due process protections built into the bankruptcy system. *In re Spring Valley Farms, Inc.*, 863 F.2d at 834. Denying this claimant participation in the plan based on that claimant's actual notice of the bar date does not subvert this policy. To the contrary, it promotes the equally significant policy of finality. *Cf. Hendrick v. Avent*, 891 F.2d 583, 587 (5th Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 64, 112 L.Ed.2d 39 (1990) (at stake is finality and integrity of transfer resulting from bankruptcy court's decision). By the same token, had this same creditor *not* had actual notice (however accidentally or serendipitously), the result might have been different.[13]

Although Plaintiffs did not receive statutory notices, Plaintiffs had actual notice of the bar date and should have filed a proof of claim within that time period. Because the *prima facie* showing of excusable neglect has been successfully rebutted, Plain-

tiffs' Motion for Enlargement of Time to File Proof of Claim will be denied.

## V. Jurisdiction

Bankruptcy courts have jurisdiction only over matters related to the bankruptcy proceeding. 28 U.S.C. §§ 157(b)(2), 1334(a), (b). Because Plaintiffs failed to file a proof of claim before the bar date, Plaintiffs have no "claim" against the estate. Consequently, this court lacks subject matter jurisdiction to hear this lawsuit because this court's jurisdiction is limited to the bankruptcy estate and the plan of reorganization which vested property of the estate in trust. *See Matter of Wood*, 825 F.2d 90, 93 (5th Cir.1987). The bankruptcy court does not have jurisdiction over the shell corporation, nor was the property of the estate ever re-vested in the corporation.[14] The motion to dismiss on grounds of lack of jurisdiction is for this reason alone well-taken and should be granted.

## CONCLUSION

Plaintiffs will be free to pursue their cause of action against the empty corporate shell, Fairchild Aircraft Corporation, in state court for what that is worth. The court will enter a separate order denying the Motion for Extension of Time in Which to File a Proof of Claim. The Court will enter a separate order granting the Motion to Dismiss for Lack of Subject Matter Jurisdiction under 28 U.S.C. § 1334(b).

---

**13.** "Might have," not "would have," in view of the Ninth Circuit's excellent observations in *Coastal Alaska Lines.*

**14.** In most cases, the property of the estate ends up going back to the corporation, so jurisdiction is retained.