In re TEXAS TAMALE COMPANY, INCORPORATED, Debtor.

Harold OTTO, Plaintiff,

v.

TEXAS TAMALE COMPANY, INCORPORATED, Defendant.

Bankruptcy No. 95–45234–H2–11.
Adversary No. 97–4335.

United States Bankruptcy Court, S.D. Texas, Houston Division.

March 31, 1998.

Wayne Kitchens, Hughes Watters & Askanase, Houston, TX, for Debtor.

Deborah Lynne Taylor, Wilner and Taylor, Houston, TX, for Plaintiff.

## MEMORANDUM OPINION AND ORDER

WILLIAM GREENDYKE, Bankruptcy Judge.

The above-styled adversary proceeding came before the court on September 24, 1997, for hearing on Texas Tamale Company,

Inc.'s motion to dismiss pursuant to Fed. R.Bankr.P. 7012(b). At the hearing, both parties consented to converting the motion to one under Fed. R. Bankr.P. 7056 and presented joint stipulations, as well as written and oral evidence. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (I). The Court must determine whether the adversary filed by Harold Otto (Otto) may be allowed as an attempt to file a late claim and if not whether the debt was discharged by the terms of the confirmed plan.

Both parties filed pleadings on the issues to be decided. Upon full consideration of the arguments by counsel, the facts, and the law, the Court makes these findings:

### FINDINGS OF FACT

The plaintiff, Harold Otto, was the former president of Texas Tamale Company, Inc. Otto was a sophisticated person having some background in corporate affairs and with some experience of the bankruptcy process due to previous enterprises which were involved with bankruptcy. In April of 1995, due to deteriorating financial conditions, the board of directors of Texas Tamale removed Otto as president. A turnaround manager was hired to act as president of the struggling corporation. Shortly after being removed as president, Otto filed an expense report seeking reimbursement from Texas Tamale for certain expenses incurred while still acting as Texas Tamale's president. These expenses totaled $12,375.34. Texas Tamale received the expense request but took no action. Even though Otto had been removed as president of the corporation, he still remained a shareholder of the corporation and participated in corporate activities such as shareholder meetings. On July 10, 1995, the board of directors of Texas Tamale held a meeting to discuss the future of the company and the possibility of filing bankruptcy under Chapter 11. Otto was present at this meeting even though he was no longer on the board. Two days after this meeting, on July 12, 1995, Texas Tamale filed a petition in bankruptcy under Chapter 11 of Title 11 of the United States Code.

The schedules filed along with the petition included most of the creditors and debts of the corporation. They did not, however, include the debt owed to Otto and failed to list him as a creditor. As this was a Chapter 11 case, the court, on July 24, 1995, entered an order setting the bar date for claims on November 23, 1995. Because Otto was not listed as a creditor, he did not receive formal notice of the bar date. Otto testified that he learned of the pending bankruptcy case in the early fall of 1995. Thus, he may have acquired actual knowledge of the case prior to the claims bar date.

On February 29, 1996, the court conditionally approved the disclosure statement and directed the debtor to transmit the disclosure statement, plan, and a ballot to all known creditors and equity security holders. On March 8, 1996, counsel for Texas Tamale transmitted the above-described items to the required entities and filed a certificate of service of same with the court. Otto, as an equity security holder, received copies of the disclosure statement, plan and a ballot. The approved disclosure statement and proposed plan sent to Otto did not have any provision for payment of any claim to Otto. The disclosure statement also included the bar date which had passed the previous November. Otto did not file a claim. Otto did not attempt to file a late claim or request the court to allow a late claim. Otto also never notified Texas Tamale of their failure to list his claims. These claims included the request for reimbursement of expenses listed above, which Texas Tamale was aware, and claims for past wages, severance pay, and attorney fees. These other claims were unknown to the debtor. Not being aware of the deficiency in their plan, Texas Tamale proceeded to confirmation of the plan which did not provide any provision for payment of Otto's claims.

Texas Tamale solicited votes from creditors and equity security holders. As an equity security holder, Otto returned his ballot rejecting the plan on April 8, 1996. At the confirmation hearing on April 15, 1996, an objecting creditor requested additional information which the court agreed was necessary in order to make an informed decision. Con-

firmation was postponed until June 11, 1996. The debtor provided the information requested and a confirmation hearing was held on June 11, 1996. After taking evidence at the confirmation hearing, the court confirmed the plan of reorganization. Texas Tamale's plan of reorganization was confirmed on June 11, 1996. At no time between receiving the disclosure statement and plan in March and the final confirmation hearing in June did Otto attempt to file a late claim or notify the debtor of its omission of his claims.

On May 13, 1997, eleven months after confirmation of the plan, Otto filed suit in the 281st District Court, Harris County, alleging that Texas Tamale owed him back wages, severance pay, and reimbursement for expenses. In his complaint, Otto stated that even though he was a creditor of the corporation, he was not notified of the pending bankruptcy case and he did not receive notice that he could file an objection or file his claim during the pendency of the bankruptcy case. Texas Tamale removed the case from state court to this court for a determination of the validity of Otto's claims.

### CONCLUSIONS OF LAW

The first issue confronting the court is whether this suit is an attempt to file a late claim against the estate of Texas Tamale and if so whether the late claim should be allowed. The second issue is if the late claim is not allowed, what is the status of Otto's claims considering the confirmed plan, his failure to file a claim, and the sufficiency of notice given to Otto of the bankruptcy proceedings. Based upon the law discussed below, the Court determines that this was an attempt to file a late claim by Otto, and that such claim should not be allowed under the standards set out by the Supreme Court in the *Pioneer*[1] case. As no late claim may be filed, the Court further finds that Otto's claims are discharged under the confirmed plan, as he had actual notice of the bankruptcy case in sufficient time to protect his rights, and failed to act.

In bankruptcy, in order to promote an efficient and orderly administration of cases, it is important for debtors to be aware of all claims that are being asserted against them. Rule 3003 of the Federal Rules of Bankruptcy Procedure is the rule governing the filing of claims in Chapter 9 and Chapter 11 cases under the Code.[2] That rule provides who may and who must file claims, as well as the time within which those claims must be filed. Specifically, Fed.R.Bankr.P. 3003(c) provides:

(c) Filing Proof of Claim.

(1) Who May File. Any creditor or indenture trustee may file a proof of claim within the time period prescribed by subdivision (c)(3) of this rule.

(2) Who Must File. Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.

(3) Time for Filing. The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed. Notwithstanding the expiration of such time, a proof of claim may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (c)(3), and (c)(4).

As the Rule clearly states, only creditors who were not scheduled or scheduled as disputed, contingent, or unliquidated must file claims. As subsection (3) points out, the time to file these claims is set by the court. This is usually done early in the case. In this case, the court set the bar date of November 23, 1995 by order dated July 24, 1996. Otto did not file his claim within the period allowed by the court. By filing this suit, Otto is attempting to collect from the reorganized debtor for claims that arose pre-petition. Although the complaint is not styled as a late

---

1. *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership et al.,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)

2. All references to Code refer to the bankruptcy code set out in Title 11 of the United States Code, unless otherwise specified.

filed claim or motion to allow late filed claim, that is the relief being requested.

The filing of late filed claims is governed by Fed.R.Bankr.P. 9006 which provides in part "when an act is required or allowed to be done at or within a specified period by these rules ..., the court for cause shown may at any time in its discretion ... order the period enlarged...." If the period of time has already expired, in order to enlarge the time to act, the party requesting the extension must request the court extend the time and demonstrate the failure to act was the result of excusable neglect.[3] There has been considerable litigation over the meaning of the phrase "excusable neglect." Numerous courts differed on their application of the phrase and the degree of neglect which would constitute excusable versus inexcusable neglect. These disputes created a division at the Circuit level in the Court of Appeals. The Supreme Court addressed the issue in *Pioneer* in order to resolve the conflict at the circuit level.

■ In *Pioneer*, the Supreme Court set forth several factors to consider when determining whether neglect is excusable. These include the danger of prejudice to the debtor, the length of delay and its potential impact on judicial proceedings, the reason for the delay, whether the delay was within the reasonable control of the movant, and whether the movant acted in good faith.

■ Applied to this case, this Court finds that the debtor would be prejudiced by allowing this late filed claim. Allowing Otto's claims could result in the debtor defaulting on its confirmed plan. Evidence was presented that his combined claims could total as much as $25,000.[4] In addition, allowing Otto to continue this litigation would drain the estate of resources which are currently being put toward its obligations under the plan.

With regard to the length of delay, this attempt by Otto to collect his claims comes eleven months after the plan was confirmed and fourteen months after Otto was made aware of his treatment under the plan. No adequate reason has been demonstrated or espoused by Otto which would justify allowing a claim this far after confirmation of the plan. This delay was certainly within the control of Otto. Nothing prevented him from raising these claims prior to confirmation. In fact, raising these claims was Otto's responsibility in order to insure that the plan was feasible and that Texas Tamale would be able to meet its obligations. Even assuming Otto was unable to raise the claims *prior* to confirmation, there is no justification for waiting eleven months after confirmation to raise the claims. Certainly Otto could have raised these claims at a period of time closer to confirmation which would have allowed the debtor a better opportunity to modify the plan, if warranted, or which would have allowed the Court to consider the claims without the plan being substantially consummated.

Finally, as to whether Otto acted in good faith, the Court must determine that Otto has not acted in good faith. It appears to the Court that Otto deliberately waited on asserting his claim in order to either destroy the debtor's chances of completing its confirmed plan or by harassing the debtor into exerting resources to defend a claim which should have been brought prior to confirmation or shortly thereafter. Under these circumstances, applying the factors set out in *Pioneer*, the Court determines that Otto's neglect was not excusable and that he should not be allowed to file a late claim.

**3.** Fed.R.Bankr.P. 9006(b) provides in full:

(1) In General. Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request made therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

**4.** Although these claims have not yet been liquidated, Exhibit 12, introduced at the hearing, outlined Otto's potential claims. These included claims for expenses in the amount of $13,800.98, back pay for $6,096.69, severance pay at $2,308.75, and vacation pay at $1,923.08.

As Otto will not be allowed to file a late claim under the standards expressed in *Pioneer*, the Court must now determine the status of his claim. Otto contends that since he did not get technical notice of the bar date prior to its passing, his claims were not discharged by the confirmed plan. Conversely, Texas Tamale argues that since Otto had actual notice in time to protect his rights, his failure to act binds him to the terms of the confirmed plan.

The issues involved with this argument relate to the breadth of the discharge and the technical requirement of notice versus the actual notice given. To begin, section 1141 of the Code sets out the effects of confirmation. Subsection (a) of that section sets out exactly which entities are bound by the terms of the confirmed plan. These entities include "the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan." [5] *See Sure–Snap Corp. v. State Street Bank & Trust Co.*, 948 F.2d 869 (2nd Cir.1991). Otto clearly qualifies as an entity falling within this subsection. Thus, at least in regard to this subsection, Texas Tamale is correct in that Otto would be bound by the provisions of the confirmed plan. It makes no difference that Otto rejected the plan at confirmation. The plan was confirmed despite his rejection, thereby making him subject to its terms.

■ Section 1141(d) goes on to explain what benefits the debtor derives from confirming a plan of reorganization. This is the goal of all entities which seek out bankruptcy protection. This subsection states that, unless otherwise specified, "the confirmation of a plan discharges the debtor from any debt that arose before the date of such confirmation, ..., whether or not—(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title; (ii) such claim is allowed under section 502 of this title; or (iii) the holder of such claim has accepted the plan." [6] By confirming a plan, the debtor discharges all pre-petition debt, with certain exceptions.[7] The confirmation of a plan of reorganization has res judicata effect on issues and *claims* raised, or which could have been raised by the creditor prior to confirmation. *In re Pavlovich*, 952 F.2d 114 (5th Cir.1992). The magnitude and breadth of this discharge section must be emphasized. The discharge covers *all* debts, whether claims are filed or not, whether the claimant accepts or rejects the plan, or whether the claim is allowed or not. The reorganized debtor is only liable for debts under the plan and those debts arising post petition. It is Texas Tamale's position that Otto's claims fall within those debts discharged.

■ The exception to the broad discharge granted under § 1141 relates to the Fifth Amendment due process requirement. Otto asserts that due process requires that a creditor in a Chapter 11 case receive formal notice of a claims bar date before it is effective against him. *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 297, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953). The purpose of the formal notice is to ensure that the creditor has a reasonable opportunity to be heard before a court denies him his claimed rights. *Id.* In the *New York* case, the debtor filed a bankruptcy petition seeking to reorganize under the Bankruptcy Act of 1898. The City of New York was one of the creditors of the debtor. Despite actual knowledge of the bankruptcy proceedings, the city never filed a claim. The bankruptcy court's final order in that case transferred all of the debtor's property to a newly organized company free of the city's liens. Shortly thereafter, the reorganized company brought

5.  11 U.S.C. § 1141(a).

6.  11 U.S.C. § 1141(d).

7.  11 U.S.C. § 1141(d)(2) excepts from discharge those debts excepted from discharge under section 523 of this title. This section is not applicable in this case, as that section only applies to except from discharge certain debts of individual debtors. Since Texas Tamale is not an individual debtor, but instead a corporate debtor, § 523 is not applicable.

a declaratory action to free the land from the liens of the city, because these liens had been forfeited by the city's failure to file a claim. The city objected and argued that due process would be violated if its claims were discharged, because they did not receive actual notice of the bar date. The Supreme Court agreed holding, "even creditors who have knowledge or the reorganization have a right to assume that the statutory 'reasonable notice' will be given before their claims are forever barred." *Id.* at 296, 73 S.Ct. at 301. The court also found that actual knowledge of the bankruptcy case did not place a duty on the creditor to inquire about the bar date. *Id.* at 296, 73 S.Ct. at 301.

■ The general rule regarding notice and the sufficiency thereof comes from another Supreme Court case, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Generally, due process requires

> notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.

*Id.* at 314, 70 S.Ct. at 657. This due process standard has been applied in the bankruptcy context in *Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966). *See also Grossie v. Sam (In re Sam)*, 894 F.2d 778, 781 (5th Cir.1990).

There is a distinction between no notice of the confirmation hearing, no notice of the bar date and no notice of the bankruptcy proceedings in general. Certainly not giving notice of the confirmation hearing would deprive a creditor of his opportunity to contest the confirmation of a plan which could affect his rights to recover against the debtor. It is easy to see how this would violate the Fifth Amendment. *Reliable Electric Co. v. Olson Constr. Co.*, 726 F.2d 620 (10th Cir. 1984) (discharge of claim without notice of confirmation hearing violates Fifth Amendment); *In re Unioil*, 948 F.2d 678 (10th Cir.1991) (bankruptcy court reversed for barring creditor's claim who had not received notice of bar date OR of the plan's confirmation hearing); *In re Leading Edge Products*, 120 B.R. 616 (Bankr.D.Mass.1990) (claim not barred when creditor did not receive notice of disclosure statement or confirmation hearing); *In re Gen. Oil Distrib., Inc.*, 68 B.R. 603 (E.D.N.Y.1986) (no notice of bar date or of confirmation hearing). A similar situation would be where the creditor received notice immediately prior to confirmation with insufficient time to adequately protect his rights. Then the creditor would essentially not have timely notice of the confirmation proceeding. *In re Atlantic Waste Sys., N., Inc.*, 199 B.R. 79 (D.N.H.1996) (insufficient notice of confirmation hearing).

Likewise, it is also easy to see how not informing a claimant of the bankruptcy proceedings in general would violate the Fifth Amendment. In such a situation, the claimant would have no indication the bankruptcy is proceeding at all. It would be the height of inequity to impair that creditor's rights without giving an opportunity to participate in the reorganization process. *Broomall Industries, Inc. v. Data Design Logic Systems, Inc.*, 786 F.2d 401 (FC 1986) (Fifth Amendment takes precedence over discharge provisions where claimant has no knowledge of pendency of proceedings); *In re Adams*, 734 F.2d 1094 (5th Cir.1984)(claim not barred when creditor received no notice of bankruptcy proceedings).

However, it is not as clear when the claimant has knowledge of the bankruptcy case and knowledge of the confirmation hearing, but does not receive formal notice of bar date in time to file a timely claim. The Fifth Amendment concerns are not as predominant. As the bankruptcy court held in *In re Fairchild Aircraft Corp.*, 128 B.R. 976 (Bankr.W.D.Tex.1991):

> The constitutional scrutiny into how notice was sent ... does not apply when the complaining party already has actual notice, because the concern that an action is being taken without the party's having had an opportunity to protect itself, the raison d'etre for the constitutional protection, is allayed. Notice, no matter how serendipitous, is still notice, and we are no longer in

constitutional waters unless the notice has failed to give the complaining party an adequate opportunity to be heard. We therefore still must examine the facts of the case ... to see if the notice that was received reasonably conveyed the relevant information in time for the Plaintiffs to respond.

Due process of law, under the Fifth or the Fourteenth Amendment, focuses upon the opportunity to be heard, notice being the most essential condition of such opportunity. Constitutional due process requires that notice be fundamentally fair and reasonably calculated to apprise interested parties of what is occurring.

*Id.* at 983.

In the present case, Otto had notice of the bankruptcy proceedings, had more than adequate notice of the confirmation hearing, participated in the confirmation process as an equity security holder, but failed to file a claim as a creditor.

Otto argues that the Court should require formal strict compliance with the notice provisions in order to discharge his claims. Without this strict compliance, Otto asserts he should be allowed to pursue his claims against the reorganized debtor. The Fifth Circuit in a number of opinions has edged away from formal strict compliance with the technical notice requirement. In *Robbins v. Amoco Production Co.*, 952 F.2d 901 (5th Cir.1992)(reh'g denied 1992), the Circuit held that the creditor had received notice when notice was mailed to the creditor's former attorney. The Court went on to note that the creditor was put on "inquiry notice" of the bankruptcy filing by virtue of a letter received concerning the bankruptcy. *Id.* at 908. The Court also cited with approval an opinion from the Ninth Circuit which held:

When the holder of a large, unsecured claim ... receives any notice ... that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril. "Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry

may have led. When a person has sufficient information to lead him to a fact, he shall be deemed to be conversant of it."

*Id.* at 908 *citing Lawrence Tractor Co. v. Gregory (In re Gregory)*, 705 F.2d 1118, 1123 (9th Cir.1983) (citation omitted). The Fifth Circuit found the letter to the creditor was "sufficient to 'excite [her] attention' and put her on guard to inquire about any actions necessary to avoid discharge of her claims against [the debtor]." *Robbins* at 908. In the instant case, the board meeting, the plan, the disclosure statement, the ballot, the confirmation hearing notice, the second confirmation hearing notice, and the confirmation hearing itself were more than sufficient to "excite" Otto's attention to assert his claims. Otto had both actual and inquiry notice of the bankruptcy proceedings, yet he failed to take any action to avoid discharge of his claims.

There is another Fifth Circuit case which has a substantial bearing on the issues before the Court. In *In the Matter of Sam*, 894 F.2d 778 (5th Cir.1990), a creditor, which first learned of the bankruptcy case eighteen days prior to the bar date and actual notice of the bar date *after* the bar date had passed, was put on notice with sufficient time to present his objections. Even with the limited notice, the constitutional due process requirements were met. *Id.* at 782. The creditor argued that his constitutional rights required actual notice of the bar date relying on the *City of New York* case from the Supreme Court. The Circuit initially noted that the *City of New York* case was decided upon "statutory rather than constitutional grounds." *Id.* at 781. The Court went on to state that the burden upon the creditor, with notice of the bankruptcy petition, to determine the bar date was not "so burdensome as to outweigh the need for expeditious administration of bankruptcy cases." *Id.* at 781 *citing In re Price*, 79 B.R. 888, 892–93 (9th Cir. BAP 1987). The policy behind the notice rules would be "satisfied when the creditor has actual knowledge of the case in time to permit him to take steps to protect his rights." *Id.* In making these determinations, the Circuit developed a two-part test to determine if due process would be satisfied. First, whether the notice apprised the

claimant of the pendency of the action, and second, whether it was sufficiently timely to permit the claimant to act. *Id.* at 782. This two-prong test was also used in *In the Matter of Christopher,* 28 F.3d 512 (5th Cir.1994) to determine due process sufficiency.

In this case, the Court concludes that the first prong of the due process analysis has been satisfied. Otto received notice of the bankruptcy proceeding, either from the board meeting, from word-of-mouth after the meeting, from the plan and disclosure statement, from the ballot received, the notice of the initial confirmation hearing, the notice of the continued confirmation hearing, or the actual confirmation hearing. Any one of these would have been sufficient to put Otto on actual or inquiry notice of this case.

As for the second prong, the timeliness element, Otto argues the notice was not sufficient as the claims bar date had already passed.[8] In the previous cases in which the creditor had either actual notice or inquiry notice, there was still time to act prior to the passing of the bar date. *Sam* at 778–79. Thus, the question is whether the duty imposed upon a creditor with notice extends beyond merely filing a claim to a duty to attempt to prosecute a motion to allow late filed claim. It is this Court's opinion that the duty does so extend. Here, when Otto received formal notice of the case and the plan's omission of his claims, he also received notice that the bar date had passed. Does this mean that he was incapable of asserting his claim? Does this mean that there was no conceivable way for him to participate in the plan of reorganization? The answer to both these questions must be no. Otto had several months prior to confirmation in order to

assert his claim. Otto could have protected his rights with a motion to allow late filed claim. Under the standards set forth earlier, it would be highly improbable that such motion would not be granted considering the facts of this case. The burden of at least attempting to secure allowance of a late filed claim would not seem too onerous or vexing for a debtor of Otto's sophistication. The Court must always weigh the burden placed upon creditors with the policies of case administration. With the constitutional safeguards of notice met, Otto's failure to meet his duty to act is fatal to his claims. The Court finds Otto had sufficient time to act in order to protect his rights. Thus, the actual notice of the debtor's bankruptcy possessed by Otto was sufficient to satisfy the dictates of due process and *Mullane.*[9]

The Court notes that the problems associated with this case could have been averted if Otto had raised these problems at the confirmation hearing. It is impossible to determine whether the plan would or should have been confirmed if the Court had been aware of the plan's omission of Otto's claims. Confirmation of a plan is not to be taken lightly. Creditors should not be encouraged to sit on their hands during the bankruptcy process and then later pursue their claims in another forum after the debtor's plan has been confirmed. Otto was a sophisticated creditor, well aware of the concept of confirmation in the bankruptcy context. He actively participated in this case as a shareholder, yet, for some reason, refused to participate as a creditor. Chapter 11 is designed to accommodate all pre-confirmation debts of the debtor. To this end, credi-

8. The evidence presented is not conclusive that Otto received actual notice after the bar date had passed. Otto testified that he learned of the case in the early fall of 1995. The bar date was set in November of 1995. For purposes of this decision, it will be assumed that he did not learn of the case until after the bar date had passed.

9. The Court acknowledges the 11th Circuit case of *In re Spring Farms, Inc.,* 863 F.2d 832 (1989) and its holding. The 11th Circuit devised a different due process test depending upon the type of debtor. For individual debtors, due process is satisfied with inquiry notice. Non-individual debtors required technical notice compliance.

The basis for this distinction, apparently revolved around the application (or non-application) of § 523(a)(3). Otto urges this Court to adopt the analysis of the 11th Circuit and draw a distinction between the due process notice requirements for individual debtors and those for non-individual debtors. This Court does not agree that due process depends on the type of the debtor. Perhaps to overly simplify, either due process is met or it is not. In any event, the 11th Circuit opinion is not controlling, and this Court feels its decision is guided by Fifth Circuit opinions which would seem to dictate a different result than that reached by the 11th Circuit.

tors with knowledge of the bankruptcy case should use *every* available means to assure that the plan provides for their claims. Every available means includes filing claims and in some circumstances, such as here, filing motions to allow late claims. Creditors are entitled to certain notices which must be provided in order to protect their rights and satisfy due process. Certainly, notice of the bankruptcy case and notice of the confirmation hearing would qualify as essential notices. Failure to give technical notice of the bar date, when the creditor has actual notice of the case, would not seem fatal when weighed against the policies of expeditious, efficient, and complete estate administration.

As Otto had time to protect his rights and failed to do so, and as the confirmed plan is final and binding, the Court finds that Otto's claims are barred by the confirmation order. Consequently, the Texas Tamale's motion to dismiss is GRANTED.